**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| CRAFTWOOD LUMBER COMPANY, an Illinois corporation; CRAFTWOOD II, INC., a California corporation dba Bay Hardware, on behalf of themselves and all others similarly situated, | Civil Action No. |
| Plaintiffs, | |
| vs. | **NOTICE OF REMOVAL** |
| ESSENDANT, INC., a Delaware corporation dba Essendant and EssendʌNt; ESSENDANT CO., an Illinois corporation, dba Essendant EssendʌNt | |
| Defendant(s). | |

# EXHIBIT A



IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

MAR 0

KEITH BRIN
Clerk of the Circuit Court

| | |
|---|---|
| Craftwood Lumber Company, *et al.*, | Case No. |
| Plaintiffs, | |
| v. | **16 CH 358** |
| Essendant Inc., *et al.*, | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PROTECTIVE MOTION FOR CLASS CERTIFICATION

NOW COME Plaintiffs Craftwood Lumber Company and Craftwood II, Inc., dba Bay Hardware ("Plaintiffs"), by their attorneys Tews, Theisen & Theisen, and in support of their Motion for Class Certification, state as follows:

### I. Introduction

This class action seeks relief from Defendants Essendant Inc. and Essendant Co. (collectively, "Defendants"), for sending junk fax advertisements in direct violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") to Plaintiffs Craftwood Lumber Company and Craftwood II, Inc., dba Bay Hardware (collectively, "Plaintiffs"), and other fax recipients.

Defendants engaged in a common course of conduct toward class members: Their junk faxes advertise Defendants' products and Defendants sent all junk faxes in the same

or similar manner. All junk faxes in this case are subject to the same federal statute, the TCPA. Like the countless junk fax class actions that have been brought and certified before it, this case is perfectly suited for class treatment.

## II. Plaintiffs' Motion Protects Against a Potential "Pick-Off" Attempt

This motion is filed concurrently with Plaintiffs' Complaint to protect against the now-common tactic by defendants to avoid class-wide accountability by making a "pick-off" offer to the named plaintiff before a motion for class certification is filed. The Illinois Supreme Court has held that defense pick-off attempts after the filing of a motion for class certification are ineffective to moot a plaintiff's claims. *See Ballard RN Ctr., Inc. v. Kohll's Pharmacy and Homecare Inc.*, No. 118644, 2015 IL 118644, at *10 (Oct. 22, 2015); *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 456 (2011).[1]

Based on these precedents, Plaintiffs have filed this early class certification motion to place themselves within this safe harbor and protect this class prosecution from any pick-off attempt by Defendants. Doubtless discovery will unearth additional facts that will bolster the compelling case for certification. Plaintiffs will submit additional briefing to incorporate facts and arguments developed in this discovery.[2]

## III. The Legal Prohibition of Junk Faxes

---

[1] Last month the United States Supreme Court held that an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case for purposes of Article III of the United States Constitution. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 665 (2016).

[2] *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) (encouraging plaintiffs to file the motion with the complaint, then seek discovery before the motion is heard), *overruled on other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015).

2

### A. The TCPA's Prohibition of Junk Faxes

The TCPA makes it "unlawful" for any person to send an "unsolicited advertisement" by facsimile transmission. § 227(b)(1)(C). An "advertisement" falls within the ambit of the TCPA if it is "any material advertising the commercial availability or quality of any property, goods, or services." § 227(a)(5). Facsimile advertisements are unsolicited if they are sent without the recipients' prior express permission, or sent to recipients with whom the advertiser does not have an "established business relationship." § 227(a)(5), (b)(1)(C)(i)-(iii). These are the only two statutory defenses available under the TCPA.

Congress originally passed the anti-junk fax law in 1991 in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012). Despite the law, American businesses and consumers continued to be "besieged" with junk faxes. Rules & Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44144, 44175 (July 25, 2003). Congress responded in 2005 by amending the TCPA through the Junk Fax Prevention Act ("JFPA"), which added important consumer protections in the form of opt-out notice requirements.[3] To comply with these requirements, an advertiser must include a clear and conspicuous notice at the top or bottom on the first page of the advertisement. The notice must provide specific

---

[3] The opt-out notice requirements are contained in § 227 (b)(1)(C)(iii), (b)(2)(D) and (b)(E), and the FCC's regulations found at 47 C.F.R. § 64.1200(a)(4)(iii)-(vi) and its 2006 order. *See* Federal Communications Commission, Report and Order and Third Order on Reconsideration, 21 FCC Rcd. 3787 ¶ 26 (2006).

disclosures to recipients (which Defendants here failed to include). A fax advertiser's noncompliance with the opt-out notice requirements has serious consequences—it separately constitutes a violation of the TCPA/FCC regulations. *Ira Holtzman, C.P.A. & Assocs., Ltd. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013).

The TCPA establishes a minimum statutory damage of $500 per transmission—without the need to show any actual damage. § 227(b)(3). A court also may increase statutory damages by up to three times if the defendant has violated the law either "knowingly" or "willfully." § 227(b)(3). Moreover, the TCPA "was not designed solely to compensate each private injury caused by unsolicited fax advertisements, but also to address and deter the overall public harm caused by such conduct." *Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000). Here, class treatment will ensure that the injured class members are able to seek recovery under the TCPA and deter the public harm caused by Defendants' mass fax-blasting campaign.

### IV. Defendants' Illegal Junk Fax Campaign

Defendants are a national wholesale distributor of workplace essentials. (Cordero Aff., Ex. 14.) Defendants maintain a network of 77 distribution centers from which they ship products to approximately 30,000 reseller customers, enabling Defendants to ship most products overnight to more than 90% of the U.S. and next day delivery to major cities in Mexico and Canada. (*Id.*) Defendants have resorted to illegal junk faxes to promote their products and services. (Compl. ¶¶ 12-16, 29, 33; Affidavit of Diana Newton ("Newton Aff.") ¶ 5, Exs. 1, 2, 4, 5, 8, 9, 10, 11, 12, 13; Affidavit of David Brunjes ("Brunjes Aff.") ¶ 7, Exs. 1, 3, 6, 7.)

Craftwood Lumber Company is a Highland Park hardware store. (Brunjes Aff. ¶¶ 1, 2.) Craftwood II, an affiliate of Craftwood Lumber Company, operates Bay Hardware in Seal Beach, California. (Newton Aff. ¶ 1.) Between them, Plaintiffs were bombarded with at least 14 junk faxes from Defendants during a two-month period alone. (*Id.*) Defendants' junk faxes explicitly promote the sale of Defendants' products and services and encourage recipients to place orders. (*Id.*)[4] Neither Plaintiff had any business relationship with Defendants nor did they give Defendants permission to send any junk faxes. (Newton Aff. ¶ 5; Brunjes Aff. ¶ 7.)

Based on their counsel's experience with junk faxes, Plaintiffs believe that the faxes received by them are the "tip of the iceberg." (Cordero Aff. ¶ 12.) Plaintiffs are confident discovery will reveal a fax advertising campaign of widespread dimensions.

## V. The Proposed Plaintiff Classes

Plaintiffs have moved to certify the following class:

> All persons and entities that were subscribers of facsimile telephone numbers to which material that discusses, describes, or promotes the property, goods or services of Defendants, or any of them, was sent via facsimile transmission (to 10 or more facsimile telephone numbers) on or after May 1, 2011, including, without limitation, the faxes attached as Exhibits 1 through 13 to the Complaint (the "Plaintiff Class"). (*See* Compl. ¶ 19.)

Plaintiffs reserve the right to amend this class definition after completion of class certification discovery.

---

[4] Buried in all of Defendants' faxes attached to the Complaint is the identical sentence in small type: "If you have received this fax in error, please accept our apologies and call toll free 877.877.4440 to be removed from our list." This sentence does not come close to complying with the TCPA's mandatory opt-out notice requirements.

## VI. Argument

### A.     The Weight of Authority Favors Certification of Junk Fax Classes

The Seventh Circuit has observed that "[c]lass certification is normal in litigation

under § 227, because the main questions, such as whether a given fax is an advertisement,

are common to all recipients." *Turza*, 728 F.3d at 684; *see also CE Design Ltd. v. King*

*Architectural Metals, Inc.*, 271 F.R.D. 595, 600 (N.D. Ill. 2010) ("the weight of

authority" supports certification of junk fax class actions), *vacated and remanded on*

*other grounds*, 637 F.3d 721 (7th Cir. 2011). Because section 2-801 of the Illinois Code

of Civil Procedure is patterned after Rule 23 of the Federal Rules of Civil Procedure,

federal decisions interpreting Rule 23 are persuasive authority on questions of class

certification in Illinois. *Mashal v. City of Chicago*, 2012 Ill. 112341, ¶ 27 (2012);

*Schlessinger v. Olsen*, 86 Ill. 2d 314, 320 (1981). Courts in the Northern District of

Illinois clearly agree with the weight of authority supporting certification of junk fax

cases, and regularly and consistently certify junk fax classes.[5] Illinois state courts do so

as well.[6]

--------------------------------------

[5] *E.g.*, *Garrett v. Ragle Dental Lab., Inc.*, No. 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-CV-5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010); *Bridgeview Health Care Ctr., Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, No. 09 C 3963, 2012 WL 3961307 (N.D. Ill. Sept. 10, 2012); *Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012); *Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013), and 2013 WL 626981 (N.D. Ill. Feb. 20, 2013); *Mussat v. Global Healthcare Res.*, No. 11 C 7035, 2013 WL 1087551 (N.D. Ill. Mar. 13, 2013); *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014).

[6] *E.g.*, *Overlord Ent., Inc. v. Wheaton-Winfield Dental Assocs., Ltd.*, No. 04 CH 1613, 2006 WL 4591049 (Ill. Cir. June 9, 2006); *Brill v. Becktold Enters., Inc.*, No. 06 CH 1520, 2009 WL 9152830 (Ill. Cir. Jan. 16, 2009); *G.M. Sign, Inc. v. 400 Freight Servs., Inc.*, No. 07 CH 2727, 2010 TCPA Rep. 1934 (Ill. Cir. Jan. 7, 2010); *Uesco v. Poolman*, No. 09 CH 16028, 2011

The common thread is that fax-blasting violations are tailor-made to the class action device. As Judge Darrah stated, "[c]lass actions were designed for these types of claims." *G.M. Sign, Inc. v. Group C Commc'ns, Inc.*, No. 08-cv-4521, 2010 WL 744262, at *6 (N.D. Ill. Feb. 25, 2010).

### B. This Case Satisfies the Requirements for Class Certification

Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, prescribes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect class interests; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. The proposed Plaintiff Class easily satisfies all section 2-801 elements.

### 1. Joinder of all members is impracticable

In assessing whether a proposed class meets the numerosity requirement, the court may "make common-sense assumptions that support a finding of numerosity." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). Relevant factors include the number of proposed class members, their geographic dispersion, the ability of individual members to bring suit on their own, judicial economy, and the inconvenience of trying a

---

WL 10798570 (Ill. Cir. Aug. 10, 2011); *Loncarevic & Assocs., Inc. v. Stanley Foam Corp.*, No. 09 CH 15403, 2013 WL 1783625 (Ill. Cir. Apr. 4, 2013); *C.E. Design, Ltd. v. C&T Pizza, Inc.*, No. 06 CH 27638, 2013 WL 1783623 (Ill. Cir. Apr. 4, 2013); *C.E. Design, Ltd. v. Letrix USA, Inc.*, No. 06 CH 26834, 2013 WL 5788356 (Ill. Cir. Aug. 30, 2013).

multitude of individual lawsuits. *Id.*; *see also Fields v. Maram*, No. 04 C 0174, 2004 WL 1879997, at \*3 (N.D. Ill. Aug. 17, 2004). A plaintiff need not show the precise number of members in the class; no magical number is necessary. *Wood River Area Dev. Corp. v. Germania Fed. Savs. & Loan Ass'n,* 198 Ill. App. 3d 445, 449–50 (5th Dist. 1990).[7] Although there is no "bright-line" test for numerosity, a proposed class of at least forty members satisfies the numerosity requirement. *Id.,* 198 Ill. App. 3d at 450.

The Complaint alleges that the Plaintiff Class to which Defendants sent junk fax advertisements is numerous. (Compl. ¶ 20.) "General knowledge and common-sense" support this allegation. Defendants have a national sales reach. (Cordero Aff., Ex. 14.) The large number of junk faxes sent to Plaintiffs in a short period and the fact that Bay Hardware is in California and Craftwood Lumber Company is in Illinois, suggest widespread distribution to what is likely thousands of members of the Plaintiff Class. *See Sadowski*, 2008 WL 2224892, at \*3 (numerosity satisfied with respect to class of Illinois junk fax recipients where "common sense" suggested that out of hundreds of thousands of faxes sent nationwide, a "good number" were received by Illinois residents). Experience of Plaintiffs' counsel supports the same conclusion. (Cordero Aff. ¶ 12.) Joinder of all class members would not just be "impracticable," but impossible.

### 2. Common questions of fact and law predominate in this action

The second section 2-801 element is that common "questions of fact or law" predominate over individual questions. A single common question of either fact or law is

---

[7] Courts have held that a TCPA plaintiff need not identify the specific fax numbers to which faxes were sent in order to have a class certified. *Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008).

enough. *Miner v. The Gillette Co.*, 87 Ill. 2d 7, 17 (1981). Generally, when all class members have been aggrieved by the same or similar misconduct, the commonality requirement is satisfied. *P.J.'s Concrete Pumping Serv. Inc. v. Nextel W. Corp.*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "Once this basic determination has been made, the fact that there may be individual questions…will not defeat the predominating common question." *Miner*, 87 Ill. 2d at 19.

Defendants' faxes appear to have been sent in the exact same manner to members of the Plaintiff Class. Where, as here, the defendant has acted in the same basic way to all members of a class, common questions predominate. *Martin v. Heinold Commodities, Inc.*, 139 Ill. App. 3d 1049, 1052 (1st Dist. 1985), *aff'd in part, rev'd in part on other grounds*, 117 Ill. 2d 67 (1987); *see also Avio, Inc. v. Alfoccino, Inc.*, No. 10-cv-10221, __F.R.D.__, 2015 WL 8731983, at *9 (E.D. Mich. Dec. 14, 2015) (common issues predominate because all class members' claims are brought under the TCPA and based on the same legal theories); *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008) (mass fax broadcasts are a standardized course of conduct).

Additionally, the TCPA/FCC regulations provide a basis for all class claims. *See Chapman*, 2014 WL 540250, at *11 ("Whether the fax broadcast violated the TCPA is an issue common to the class"). Under the TCPA all members are entitled to same exact relief.. Because the successful adjudication of the class representative's claim will establish the right of recovery for all other class members, common questions predominate. *Clark v. TAP Pharm. Prods., Inc.*, 343 Ill. App. 3d 538, 548 (5th Dist. 2003); *Gordon v. Boden*, 224 Ill. App. 3d 195, 201 (1st Dist. 1991).

This case also contains many common legal issues determinable on a class basis:

- Are the faxes "advertisements" under the TCPA?
- Who are the senders of the faxes?
- Are Defendants vicariously liable for each other's acts or omissions violating the TCPA and FCC regulations?
- How did Defendants obtain the telephone numbers to which they sent their junk faxes and did that mode and method comply with the requirements of § 227 (b)(1)(C)(ii) and FCC regulations?
- Did Defendants include in their faxes "opt-out" notices that complied with the TCPA?
- Whether an order dated August 28, 2015, from the Federal Communications Commission Consumer and Governmental Affairs Bureau "waiving" any violation by Defendants of 47 C.F.R. § 64.1200(a)(4)(iv) (requiring an opt out notice for solicited faxes) can immunize Defendants from liability in private party litigation brought under authority of § 227(b)(3)?
- Did Defendants commit "knowing" or "willful" violations of the TCPA and should damages should be increased on account of any such "knowing" or "willful" violations?
- Is the injunctive relief requested in the Complaint warranted?

These common questions of both fact and law easily satisfy section 2-801(2).

### 3. Plaintiffs will fairly and adequately represent the classes

This case also satisfies the adequate representation requirement. The purpose of this requirement "is merely to insure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chartered v. Hertz Corp.,* 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988). The

10

class representative's claim need not be identical to the other class members' claims; rather, it is enough that the representative not seek relief antagonistic to other class members. *Id.; see also Steinberg v. Chicago Med. Sch.,* 69 Ill. 2d 320, 338 (1977).

Here, Plaintiffs and the proposed Plaintiff Class have the same legal claims based on the same statutes and/or regulations and are entitled to the same relief. There is a perfect nexus between Plaintiffs' claims and those of the other class members; they share the interest of proving that Defendants violated the TCPA by sending them unsolicited faxes.

Moreover, there are no differing interests between Plaintiffs and other class members, let alone any disqualifying ones. Prosecution of this case will be overseen by their respective officers, who are experienced business persons. (Newton Aff. ¶ 2; Brunjes Aff. ¶¶ 3-4.) Frustrated with FCC inaction on their complaints, David Brunjes and Diana Newton have pursued this litigation for reasons fully consistent with the policies behind the TCPA. (Newton Aff. ¶¶ 3, 6; Brunjes Aff. ¶¶ 5, 8.) Both understand the responsibilities of a class representative and are prepared to discharge those responsibilities here. (Newton Aff. ¶ 7; Brunjes Aff. ¶ 9.) Indeed, Plaintiffs have successfully prosecuted other class actions under the TCPA. (Cordero Aff. ¶¶ 9-10.)

Moreover, Plaintiffs' attorneys are highly experienced in class actions and have handled numerous TCPA class actions. Co-lead attorneys Darryl Cordero and Scott Zimmermann have teamed to successfully prosecuted numerous junk fax cases over the past decade. (Cordero Aff. ¶¶ 5-6.)[8] They have the experience, knowledge and resources

to adequately represent and protect the interests of the putative class in this case. (*Id.* ¶¶ 5-6, 11.)

### 4. A class action provides the best means for fair and efficient adjudication of class members' claims

Where, as here, the first three requirements of section 2-801 have been satisfied, it is "manifest that the final requirement of the statute [also] is fulfilled." *Steinberg*, 69 Ill. 2d at 339; *see also P.J.'s Concrete Pumping Service*, 345 Ill. App. 3d at 1004; *Clark*, 343 Ill. App. 3d at 552. In assessing the fourth requirement of section 2-801, the court may also consider "whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In addition, class treatment is found appropriate when it provides the only practical means to provide redress to all class members. *Id.*

The strong weight of authority favoring certification of TCPA classes reflects a straightforward application of the policy objective behind the class action – to encourage individuals, who may otherwise lack incentive to file individual actions, to join with others to vindicate their rights. *Hansberry v. Lee*, 311 U.S. 32, 41 (1940). The overwhelming majority of courts have certified TCPA classes precisely because they fit this paradigm. *See Overlord Enterprises*, 2006 WL 4591049, at *8 ("forcing the class members to pursue their claims individually... would seriously undermine the goal of the

---

[8]  Co-lead counsel plan on filing applications for admission pro hac vice.

TCPA scheme."). As one district court recently explained:

> "[I]t is apparent that allowing consumers to bring a class action under the TCPA is a uniquely effective way to protect a population already besieged by unwanted and aggressive solicitations from persons or companies hawking their products. In fact, if the goal of the TCPA is to remove a 'scourge' from our society, it is unlikely that 'individual suits would deter large commercial entities as effectively as aggregated class actions...[Citation omitted.]"

*Jay Clogg Realty Group, Inc. v. Burger King Corp.*, 298 F.R.D. 304, 310 (D. Md. 2014)

Here, the economics of litigation make class adjudication the ***only*** practical means to hold Defendants accountable for their violations of law. Only by aggregating their claims can those impacted by Defendants' junk faxes effectively challenge Defendants' calculated, widespread defiance of federal law. *See Chapman*, 2014 WL 540250, at *16 (a $500 statutory recovery gives "individual plaintiffs...a low incentive to bring a lawsuit on their own behalf"); *Mussat*, 2013 WL 1087551, at *7 (simple economics make it unlikely individuals will pursue TCPA actions on their own); *Trynex, Inc.*, 2013 WL 66181, at *16 ("the small potential recovery in individual actions...weighs in favor of class-wide resolution").

Leaving the vast majority of class members without a remedy would also have the undesirable effect of allowing Defendants to benefit from their illegal advertising. *Clean Carton Co. v. Prime TV, LLC,* No. 01 AC-11582, 2004 TCPA Rep. (TCPALaw.com) 1294, slip op. at 14 (Mo. Cir. Ct. July 13, 2004) (absent a class remedy, "a marketer could engage in widespread unsolicited fax advertising, reap the benefits of this inexpensive advertising medium… and then pay a handful of small claims judgments as

13

merely a 'cost of doing business.'").

Conversely, there is no advantage to individual control over the prosecution of claims from either a judicial or litigant viewpoint. Litigating this case on a class basis is a far more efficient use of time and resources and will lead to a uniform result:

> "Class certification regarding Defendant's alleged TCPA violations would promote efficiency and uniformity by having one forum, prevent the flooding of individual cases in Illinois courts or the bringing of none as a result of increased burden to individual litigants. Certification would also prevent waste of judicial resources, and aid judicial administration."

*C.E. Design Ltd. v. Matrix LS, Inc.*, No. 05L269, 2010 TCPA Rep. (TCPALaw.com) 19174, slip op. at 9 (Ill. Cir. Apr. 16, 2010); *accord, Avio,* 2015 WL 8731983, at *10 (Because a TCPA claim is a "negative value suit," a class action enables class members to share the burden of litigating claims); *Bee, Denning, Inc. v. Capital Alliance Group,* 310 F.R.D. 614, 629-630 (S.D. Cal. 2015); *Overlord Enterprises,* 2006 WL 4591049, at *7.

Private class actions are also vital to effective enforcement of the law. The TCPA "functions as a bounty to incentivize private enforcement actions." *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC,* No. 12-22330-CIV, 2014 WL 7366255, at *3 (S.D. Fla. Dec. 24, 2014); *see also ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 515 (3d Cir. 1998) (class action remedy gives TCPA its "teeth"), *abrogated by Mims*, 132 S. Ct. 740. Further, "class relief is superior because it will educate the public about the TCPA and its junk faxing prohibition." *Clean Carton Co.*, slip op at 14.

For all of these reasons, a class action provides *the* appropriate method for the fair

and efficient adjudication of the controversy.

## VII.   Conclusion

Based on the foregoing, Plaintiffs respectfully request that the Court certify the

proposed Plaintiff Class and designate Plaintiffs as Class Representatives and their

attorneys as Class Counsel.

DATED: March 2, 2016          TEWS, THEISEN & THEISEN

By: _____

Michael D. Theisen

Michael D. Theisen
Attorney at Law
Tews, Theisen & Theisen
One North LaSalle Street, Suite 3000
Chicago, Illinois 60602
Office: 312-782-7320
Fax: 312-782-7138
Cell: 847-275-7686
Email: mdt@tewstheisenlaw.com

Attorneys for Plaintiffs Craftwood Lumber
Company, Craftwood II, Inc., dba Bay
Hardware, and for all others similarly
situated

4826-2964-0493.7

15

IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation; Craftwood II, Inc., a California corporation, dba Bay Hardware, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Essendant Inc., a Delaware corporation, dba Essendant and EssendΛnt; Essendant Co., an Illinois corporation, dba Essendant and EssendΛnt; <br><br> Defendants. | Case No.    **16 CH 358** <br><br><br><br> F I L E D <br><br> MAR 0 4 2016 <br><br> *Keith Brin* <br> CIRCUIT CLERK |

**COMPLAINT FOR VIOATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, AND FCC REGULATIONS [Class Action] AND FOR DECLARATORY RELIEF**

NOW COME Plaintiffs Craftwood Lumber Company and Craftwood II, Inc., dba Bay Hardware ("Plaintiffs"), by their attorneys Tews, Theisen & Theisen, bring this action on behalf of themselves and all other similarly situated parties, and state as follows:

### Introduction

1.      More than two decades ago the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, was enacted into law.  The law responded to countless complaints

by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes. The law prohibited the transmission of facsimile advertising without prior express invitation or permission of the recipient. In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005. As amended, the law requires senders to include in their faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future junk faxes and the legal requirements for exercising that right.

2.       Plaintiffs bring this class action to recover damages for and enjoin repeated junk faxing by Defendants in direct violation of the TCPA, in violation of the regulations promulgated by the Federal Communications Commission. Defendants have sent a torrent of junk faxes to Plaintiffs, including, but not limited to, the facsimile transmission of advertisements to Plaintiffs' telephone facsimile numbers on March 3, 2015, March 27, 2015, April 3, 2015, April 9, 2015, April 10, 2015, April 15, 2015, April 16, 2015, April 23, 2015, and April 30, 2015, true and correct copies of which are attached hereto as Exhibits 1 through 13.

**Standing and Jurisdiction**

3.       This Court has subject matter jurisdiction over this matter and Plaintiff has standing to seek relief in this Court because 47 U.S.C. § 227(b)(3) authorizes

commencement of an action in an appropriate state court to obtain damages in the minimum amount of $500 for each violation of the TCPA, to obtain injunctive relief, or for both such actions.

## The Parties

4.     Plaintiff Craftwood Lumber Company ("Craftwood") is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Illinois, with its principal place of business in Highland Park, Illinois.  Craftwood is, and at all times relevant hereto was, the subscriber of the facsimile telephone number ((847) 831-2805) to which Defendants sent junk faxes, including, but not limited to, the faxes attached as Exhibits 1, 3, 6 and 7 to this Complaint.

5.     Plaintiff Craftwood II, Inc. ("Craftwood II"), is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of California, doing business as Bay Hardware in Seal Beach, California.  Craftwood II is, and at all times relevant hereto was, the subscriber of the facsimile telephone number ((562) 594-4054) to which Defendants sent junk faxes, including, but not limited to, the faxes attached as Exhibits 1, 2, 4, 5, 8, 9, 10, 11, 12 and 13 to this Complaint.

6.     Defendant Essendant Inc. is a corporation organized and existing under the laws of the state of Delaware, now doing business as "Essendant" and "EssendΛnt,"

-3-

and having its principal place of business in Deerfield, Illinois. Essendant Inc. is publicly traded on the NASDAQ exchange (ESND) and is a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1). At all relevant times through May 31, 2015, Essendant Inc. was known as "United Stationers Inc."

7.      Defendant Essendant Co. is a corporation organized and existing under the laws of the state of Illinois, now doing business as "Essendant" and "EssendΛnt," and having its principal place of business in Deerfield, Illinois. Essendant Co. is, and at all times relevant hereto was, a wholly-owned subsidiary and principal operating company of Defendant Essendant Inc. and is a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1). At all relevant times through May 31, 2015, Essendant Co. was known as United Stationers Supply Company. On June 29, 2015, Defendant Essendant Co. acquired Lagasse LLC, formerly an Illinois corporation, by merger and therefore succeeded to all liabilities and legal obligations of Lagasse LLC. At all relevant times Lagasse was a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1).

8.      As used herein, the term "Defendants" refers, jointly and severally, to Defendants Essendant Inc. and Essendant Co.

**The TCPA's Prohibition of Junk Fax Advertising**

9.      By the early 1990s advertisers had exploited facsimile telephone

-4-

technology to blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance, and cost on the recipients. Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate fax communications from junk advertisements and to discard the latter.

10.     Congress responded to the problem by passing the TCPA in 1991. The law was enacted to eradicate junk faxes and stanch "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317 (1991). It sought to accomplish this objective by prohibiting advertisers from transmitting facsimile advertisements without first obtaining prior express invitation or permission from the recipient.

11.     The original law did not achieve its objectives, however. In the decade following the TCPA's enactment, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop. FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003). Congress responded by strengthening the law through the JFPA. This 2005 amendment, for the first time, required senders to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements." *See* § 227(b)(1)(C)(iii), (b)(2)(D),

(b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(4)(iii)-(vii). To comply with these requirements, an advertiser must include a clear and conspicuous notice at the top or bottom of the first page of the advertisement, separate from the advertising copy and any other disclosures, that informs recipients of their right to stop future junk faxes and of the legal requirements for an effective opt-out request. The notice must be distinguishable from the advertising copy by use of bolding, italics and different font. The notice must provide each of the following disclosures to recipients:

      A.    a disclosure that the recipient is entitled to opt-out from receiving future facsimile advertisements – thereby giving recipients impetus to opt-out, if they desire, knowing that they have the right to do so;

      B.    a disclosure that the sender's failure to honor a recipient's opt-out request within 30 days is unlawful – thereby encouraging recipients to opt-out, if they do not want future faxes, by advising them that their opt-out requests have the force of law;

      C.    a disclosure advising the recipient that he or she can opt-out of all his or her fax numbers, and not just the one that to which the particular fax was sent – thereby instructing a recipient how to stop junk faxes to all of its, his or her fax numbers;

      D.    a disclosure of both a domestic telephone and fax number for the recipient to make opt-out requests – thereby giving the recipient the choice of methods to communicate the request;

E.      a disclosure of a cost-free mechanism for a recipient to submit opt-out requests – thereby further encouraging recipients to make an opt-out request because it would be at no additional cost to them; and

F.      further disclosures expressly informing the recipient how to make a valid opt-out request: that requests must be made either to the telephone number, fax number or cost-free mechanism set forth in the notice, and that the person making the request cannot, after the opt-out request, provide express permission for the advertiser to send fax advertisements.

**Defendants' Illegal Junk Fax Program**

12.      Defendants collectively operate as wholesale distributors and sellers, throughout the United States, of traditional office products, janitorial and break room supplies, technology products, industrial supplies, and automotive aftermarket equipment. Within the period commencing on May 1, 2011, Defendants have implemented an illegal junk fax advertising program. The purpose, design and effect of the program is the illegal transmission of fax advertisements to promote the sale of Defendants' property, goods and services. Among the many services promoted by the illegal junk faxes are Defendants' websites, which are advertisements for the companies and their property, goods and services. All faxes that are the subject of this lawsuit were designed as, intended as, and constituted advertisements under the TCPA within their four corners and as part of Defendants' overall marketing and promotional activities and sale of

Defendants' property, goods and services. These illegal junk faxes include, but are not limited to, Exhibits 1 through 13 to this Complaint.

13. Plaintiffs are informed and believe, and upon such information and belief allege, that Defendants transmitted the faxes that are the subject of this lawsuit without obtaining recipients' prior express invitation or permission, in direct violation of the TCPA and FCC regulations. Plaintiffs did not give Defendants prior express invitation or permission to send fax advertisements, including, but not limited to, Exhibits 1 through 13.

14. In the course of their illegal fax advertising campaigns Defendants failed to comply with the Opt-Out Notice Requirements and separately violated the TCPA and FCC regulations. As a further result of these violations, Defendants are precluded from asserting either of the two defenses available under the TCPA: (i) "prior express invitation or permission" ("PEP") that may have been given by a recipient (§ 227(a)(5)); and (ii) a three-prong defense based on transmissions to a recipient with whom Defendants may have had an "established business relationship" ("EBR"), § 227(b)(1)(C)(i)-(iii).

15. Defendants' violations of the TCPA and/or FCC regulations were "willful" and/or "knowing" as used in § 227(b)(3) because, among other things:

A. Defendants fully intended their acts; the companies' repeated transmission of fax advertisements was no mistake or accident.

B. Defendants made no effort to comply with the Opt-Out Notice Requirements in connection with the faxes that are the subject of the lawsuit. To the extent that any faxes mention the possibility of being "removed from our list," it was without regard to, or consideration of, the Opt-Out Notice Requirements.

C. Defendants are well aware of the TCPA, its prohibitions, and the illegality of their conduct. One of Defendants' websites acknowledges that "federal law requires" recipients' consent to receive what Defendants characterize as "business-related faxes after June 30, 2005."

16. Plaintiffs are informed and believe, and upon such information and belief allege, that each Defendant is directly and/or vicariously liable for the violations of the TCPA and FCC regulations alleged herein because, *inter alia*, it (a) was a sender of the fax advertisements that are the subject of this lawsuit because these advertisements were sent on its behalf and/or its property, goods or services were promoted in such advertisements; (b) approved, authorized and/or participated in the formulation, preparation and sending of the fax advertisements; (c) received and retained the benefits of the fax advertisements in the form of revenue, and name/brand recognition and promotion; (d) had actual notice of the unlawful activity constituting the violations herein and failed to take steps to prevent the same; and (e) ratified the acts and omissions of the

other Defendants constituting the violations herein.

17.     **Private Right of Action**.  Under section (b)(3) of the Act, Plaintiffs have a private right of action to bring this action on behalf of themselves and on behalf of the Plaintiff Class to redress Defendants' violations of the Act and the FCC regulations.

**Class Action Allegations**

18.     **Statutory Reference**.  This action is properly maintainable as a class action under authority of Code of Civil Procedure section 2-801 because: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members; (c) the representative parties will fairly and adequately protect the interest of the class; and (d) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

19.     **Class Definition.**  The Plaintiff Class consists of all persons and entities that were subscribers of facsimile telephone numbers to which material that discusses, describes, or promotes the property, goods or services of Defendants, or any of them, was sent via facsimile transmission (to 10 or more facsimile telephone numbers) on or after May 1, 2011, including, without limitation, the faxes attached hereto as Exhibits 1 through 13.  Plaintiffs reserve the right to amend the class definition after completion of

-10-

class certification discovery.[1]

20.     **Class Size**.  Plaintiffs are informed and believe, and based and upon such information and belief allege, that the Plaintiff Class number in the thousands.

21.     **Typicality**.  The claims of Plaintiffs are typical of those held by the Plaintiff Class because, among other things, they were sent the same type of faxed communications; they have the same claims under the TCPA and FCC regulations; and they are entitled to the same statutory damages and injunctive relief.

22.     **Adequacy of Representation**.  The Plaintiff Class will be well represented by Plaintiffs and their counsel.  Plaintiffs appreciate the responsibilities of a class representative and understand the nature and significance of the claims made in this case.  Plaintiffs can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between their interests and the interests of other class members.  Plaintiffs have successfully prosecuted other TCPA class actions. Plaintiffs' counsel have the necessary resources, experience and ability to prosecute this case on a class action basis.  Plaintiffs' counsel have extensive experience representing consumers and other clients in complex business disputes, have significant experience as

---

[1]     Excluded from the Plaintiff Class are officers, directors, and employees of any Defendant or any affiliated company; legal representatives, attorneys, heirs, successors or assigns of any Defendant, any Defendant's officers and directors, or of any affiliated company; any entity in which any of the foregoing persons have or have had a controlling interest; any members of the immediate families or the foregoing persons; any federal, state and/or local governments, governmental agencies, including the Federal Communications Commission; and attorneys of record in this action and their immediate family members.

class counsel in federal and state courts, and have significant experience litigating TCPA class actions.

23. **Impracticability of Joinder.** Joinder of all Plaintiff Class members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each class member, in comparison to the time and costs associated with joinder in the litigation on an individual basis.

24. **Common Questions of Law and Fact Are Predominant.** Numerous common questions of law and fact may be jointly tried and would not require each member individually to litigate numerous and substantial questions to determine his or her right to recover following the class judgment.

A. **Common Questions of Fact.** This case presents numerous questions of fact that are common to all class members' claims. The case arises out of a common nucleus of fact and standardized conduct by Defendants because, among other things: (1) the same type of faxes; (2) were transmitted by the same senders, in the same manner and from the same facsimile telephone number; (3) in violation of the same statute(s) and FCC regulations in the same manner; and (4) entitling class members to receive the same statutory damages and injunctive relief.

B. **Common Questions of Law.** The case presents numerous common questions of law, including, but not limited to:

-12-

(1) whether the faxes that are the subject of this lawsuit are advertisements within the ambit of the TCPA and the FCC regulations;

(2) whether Defendants complied with the Opt-Out Notice Requirements of the TCPA and the FCC's regulations, and the legal consequences of the failure to comply with those requirements;

(3) what constitutes a willful or knowing violation of the TCPA within the meaning of section (b)(3) of the Act;

(4) whether Defendants committed willful and/or knowing violations of the TCPA and/or the FCC's regulations;

(5) whether damages should be increased on account of Defendants' willful and/or knowing violations and, if so, by what amount;

(6) whether a "waiver" extended by the Federal Communications Commission Consumer and Governmental Affairs Bureau of any violation by Defendants of 47 C.F.R. § 64.1200(a)(4)(iv) (requiring an opt out notice for solicited faxes) can immunize Defendants from liability in private party litigation brought under authority of 47 U.S.C. § 227(b)(3); and

(7) whether the injunctive relief sought in paragraphs 30 and 34 should

-13-

issue.

25.     **Injunctive Relief Is Appropriate**.  Defendants have acted on grounds that apply generally to the Plaintiff Class, so that injunctive relief is appropriate respecting the Plaintiff Class as a whole.

26.     **Predominance and Superiority of Class Adjudication**.  The action should be maintained as a class action because questions of law and fact common to members of the classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, including:

A.     Common questions of law and fact, including those identified in paragraph 24, predominate over questions, if any, affecting only individual members.

B.     Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

C.     Proof of the claims of Plaintiffs will also prove the claims of the Plaintiff Class without the need for separate or individualized proceedings, and the statutory damages provided for in the TCPA are the same for all members of the Plaintiff Class.

D.      Defendants have acted pursuant to common policies and practices in the same or similar manner with respect to all members of the Plaintiff Class.

27.      **Appropriate Method for Fair and Efficient Resolution of the Controversy.** A class action is an appropriate method for the fair and efficient adjudication of the controversy for several reasons:

A.      Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

B.      Because Defendants have acted on grounds that apply generally to the class, final injunctive relief is appropriate respecting the class as a whole.

C.      Questions of law and fact common to members of the classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

D.      Common questions of law and fact, including those identified in paragraph 24, predominate over questions affecting only individual members.

E.      Absent class certification there is a possibility of multiple individual cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

-15-

F.      Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action.  Individual action to remedy Defendants' violations  would be grossly uneconomical.  As a practical matter, the claims of the Plaintiff Class are not likely to be redressed absent class certification.

G.      Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the fees and costs of litigation among class members in relationship to the benefits received.

H.      **Notice**.  Plaintiffs contemplate that notice be provided to all members of the Plaintiff Class that can be identified through reasonable effort.  The notice will concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues and defenses; that a class member may enter an appearance through counsel if the member so desires; if the class is certified that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members.

**Count I: Violations of 47 U.S.C. § 227 and FCC Regulations**

28.     **Incorporation**.  Plaintiffs and the Plaintiff Class reassert and restate the

-16-

allegations set forth in paragraphs 1 through 27, above.

29.     **Defendants' Violations of the Prohibition of Unsolicited Facsimile Advertising.** Commencing May 1, 2011, and including, without limitation, on March 3, 2015, March 27, 2015, April 3, 2015, April 9, 2015, April 10, 2015, April 15, 2015, April 16, 2015, April 23, 2015, and April 30, 2015, Defendants violated the TCPA and FCC regulations promulgated under the Act by reason of, among other things, transmitting unsolicited advertisements from telephone facsimile machines, computers, or other devices to telephone facsimile machines using facsimile telephone numbers of Plaintiffs and other members of the Plaintiff Class.

30.     **Injunctive Relief.** Subsection (b)(3)(A) of the Act authorizes Plaintiffs to bring an action to enjoin a violation of the Act and/or FCC regulations. Plaintiffs request that preliminary and permanent injunctions issue to: (1) prohibit Defendants, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with them, from committing further violations of the Act and FCC regulations, and thereby, among other things, prohibiting Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending to any person or entity any further unsolicited fax advertisements or fail to comply with the Opt-Out Notice Requirements; (2) require Defendants to deliver to Plaintiffs all records of facsimile advertisements that are the subject of this lawsuit, including all content sent via facsimile, fax lists used, and records

of transmission; (3) require Defendants to adopt ongoing educational, training and monitoring programs to ensure compliance with the TCPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendants to provide written notice to all persons and entities to whom Defendants sent, via facsimile transmission, advertisements in violation the Act and/or FCC regulations, warning such persons and entities that the facsimile transmission of unsolicited advertisements or advertisements that do not comply with the Opt-Out Notice Requirements is in violation of the TCPA and FCC regulations and that they should not be led or encouraged in any way by Defendants' violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require Defendants to conspicuously place on the homepage of their websites the warnings contained in subparagraph (4) of this paragraph.

31.     **Damages**.  Subsection (b)(3)(B) of the Act provides for the recovery of damages in the minimum amount of $500 for each violation by Defendants of the TCPA and/or FCC regulations alleged in this Count.  In addition, Plaintiffs are informed and believe, and upon such information and belief allege, that Defendants committed their violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B) of the Act.

**Count II: Violations of 47 U.S.C. § 227 and FCC Regulations**

-18-

32.     **Incorporation**.  Plaintiffs and the Plaintiff Class reassert and restate the allegations set forth in paragraphs 1 through 27, above.

33.     **Defendants' Violations of the Opt Out Notice Requirements**. Commencing May 1, 2011, and including, without limitation, on March 3, 2015, March 27, 2015, April 3, 2015, April 9, 2015, April 10, 2015, April 15, 2015, April 16, 2015, April 23, 2015, and April 30, 2015, Defendants violated the TCPA and FCC regulations promulgated under the Act by reason of, among other things, transmitting advertisements that failed to comply with the Opt-Out Notice Requirements from telephone facsimile machines, computers, or other devices to telephone facsimile machines using facsimile telephone numbers of Plaintiffs and other members of the Plaintiff Class.

34.     **Injunctive Relief**.  Subsection (b)(3)(A) of the Act authorizes Plaintiff Craftwood to bring an action to bring an action to enjoin a violation of the Act and/or FCC regulations.  Plaintiff Craftwood and the Plaintiff Class request that the Court enter the following relief, in the form of preliminary and permanent injunctions that require Defendants to place on the first page of all facsimile advertisements a notice that is clear, conspicuous and fully complies with the Opt-Out Notice Requirements.

35.     **Damages**.  Subsection (b)(3)(B) of the Act provides for the recovery of damages in the minimum amount of $500 for each violation by Defendants of the TCPA and/or FCC regulations alleged in this Count.  In addition, Plaintiffs are informed and

believe, and upon such information and belief allege, that Defendants committed their violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B) of the Act.

## Count III: Declaratory Relief

36.     **Incorporation.** Plaintiffs and the Plaintiff Class reassert and restate the allegations set forth in paragraphs 1 through 27, above.

37.     An actual controversy has arisen and now exists between Plaintiffs and the Plaintiff Class, on the one hand, and Defendants, on the other hand. Plaintiffs contend that Defendants did not obtain prior express invitation or permission to send, within the period commencing on May 1, 2011, facsimile advertisements to subscribers of facsimile telephone numbers, including Plaintiffs and the Plaintiff Class. On information and belief, Defendants dispute this contention and contend that they obtained prior express invitation or permission to send such facsimile advertisements to subscribers of facsimile telephone numbers, including Plaintiffs and the Plaintiff Class.

38.     An actual controversy has arisen and now exists between Plaintiffs and the Plaintiff Class, on the one hand, and Defendants, on the other hand. Plaintiffs and the Plaintiff Class contend that Defendants did not include in their fax advertisements disclosures sent within the period commencing on May 1, 2011, including to Plaintiffs

-20-

and the Plaintiff Class, that complied with the Opt-Out Notice Requirements. On information and belief, Defendants dispute this contention and contend that they complied with the Opt-Out Notice Requirements.

39.     An actual controversy has arisen and now exists between Plaintiffs and the Plaintiff Class, on the one hand, and Defendants, on the other hand. Defendants contend that an order by the Federal Communications Commission Consumer and Governmental Affairs Bureau on August 28, 2015, bestowed immunity on them for violation of 47 C.F.R. § 64.1200(a)(4)(iv) in any private civil proceeding brought under authority of 47 U.S.C. § 227(b)(3). Plaintiffs and the Plaintiff Class dispute this contention and contend that the bureau's order does not immunize Defendants from liability in a private civil action.

40.     Plaintiffs and the Plaintiff Class desire a judicial determination that:

A.     Defendants did not obtain prior express invitation or permission to send facsimile advertisements to subscribers of facsimile telephone numbers, including Plaintiffs and the Plaintiff Class, within the period commencing on May 1, 2011.

G.     Defendants did not include in their fax advertisements sent within the period commencing on May 1, 2011, an opt-out notice that complied with the Opt-Out Notice Requirements.

H.      An order by the Federal Communications Commission Consumer and Governmental Affairs Bureau on August 28, 2015, cannot immunize Defendants for any violation of 47 C.F.R. § 64.1200(a)(4)(iv) in a private civil proceeding brought under authority of 47 U.S.C. § 227(b)(3).

**Prayer for Relief**

WHEREFORE,  Plaintiffs and the Plaintiff Class pray for judgment against Defendants, and each of them as follows:

**On Count I:**

1.      In accordance with subsection (b)(3)(B) of the Act, awarding statutory damages in the amount of $500 for each alleged violation of the Act and/or the FCC regulations in an amount not less than $5 million, and trebling of such statutory damages;

2.      Entering the preliminary and permanent injunctions requested in paragraph 30 of this Complaint;

**On Count II:**

3.      In accordance with subsection (b)(3)(B) of the Act, awarding statutory damages in the amount of $500 for each violation of the Opt-Out Notice Requirements in

an amount not less than $5 million, and trebling of such statutory damages;

4.     Entering the preliminary and permanent injunctions requested in paragraph 34 of this Complaint;

**On Count III:**

5.     A judicial declaration that Defendants did not obtain prior express invitation or permission, within the meaning of 47 U.S.C. § 227(a)(5), to send facsimile advertisements to subscribers of facsimile telephone numbers, including Plaintiffs and the Plaintiff Class, within the period commencing on May 1, 2011;

6.     A judicial declaration that Defendants did not include in their fax advertisements sent within the period commencing on May 1, 2011, including to Plaintiffs and the Plaintiff Class, an opt-out notice that complied with the TCPA and FCC regulations;

7.     A judicial declaration that an order by the Federal Communications Commission Consumer and Governmental Affairs Bureau on August 28, 2015, cannot immunize Defendants for any violation of 47 C.F.R. § 64.1200(a)(4)(iv) in a private civil proceeding brought under authority of 47 U.S.C. § 227(b)(3);

**On All Counts:**

8.      Certifying the Plaintiff Class defined in paragraph 19 of this Complaint;

9.      Appointing Plaintiffs as representatives for the Plaintiff Class and awarding Plaintiffs an incentive award for their efforts as class representatives;

10.     Appointing Plaintiffs' counsel as counsel for the Plaintiff Class;

11.     Ordering payment of Plaintiffs' costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

12.     Ordering Defendants to provide notice to members of the Plaintiff Class proposed in paragraph 19, at their own expense, of the pendency of this Action and all other notices ordered by the Court;

13.     Awarding prejudgment interest; and

14.     Awarding such other and further relief as the Court shall deem just and proper.

DATED:  March 2, 2016              TEWS, THEISEN & THEISEN

-24-

By: _____
    Michael D. Theisen

Michael D. Theisen
Attorney at Law
Tews, Theisen & Theisen
One North LaSalle Street, Suite 3000
Chicago, Illinois 60602
Office: 312-782-7320
Fax: 312-782-7138
Cell: 847-275-7686
Email: mdt@tewstheisenlaw.com

Attorneys for Plaintiffs Craftwood Lumber
Company and Craftwood II, Inc., dba
Bay Hardware, and for all others
similarly situated



March 1  2015

## 2015 Freight Plan Changes

Dear Valued Customer,

In order to simplify our fuel surcharge, we will be consolidating our two former LBI and LTL scales into one standard program, which will now encompass both fleet and carrier delivery methods.

Accordingly, the following changes will apply effective April 1, 2015.

| DOE FUEL PRICE RANGE | SURCHARGE |
|---|---|
| $0.00-$2.50 | $ |
| $2.50-$2.99 | $  3.50 |
| $3.00-$3.49 | $  6.00 |
| $3.50-$3.99 | $  9.50 |
| $4.00-$4.49 | $  12.50 |
| $4.50-$4.99 | $  16.00 |
| $5.00-$5.49 | $  18.50 |
| $5.50-$5.99 | $  21.50 |
| $6.00-$6.49 | $  24.00 |
| $6.50-$6.99 | $  27.50 |

If you need further information, please feel free to contact your sales representative.

Thank you for your business

Sincerely,

Harry Dechelli
Senior Vice President Group Sales

If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list.

Exhibit 1



March 1, 2015

## 2015 Freight Plan Changes

Dear Valued Customer

In order to simplify our freight program, we will be consolidating our two former LBI and LTL programs into one Into Stock program, which will now encompass both fleet and carrier delivery methods. Accordingly, the following changes will apply effective April 1, 2015.

### 2015 Freight Charges for Lagasse Into Stock Accounts

| | |
|---|---|
| Fleet & Carrier daily delivery <$750 | = $42 small delivery fee + fuel surcharge |
| Fleet & Carrier daily delivery $751-$1000 | = $32 small delivery fee + fuel surcharge |
| Fleet & Carrier daily delivery $1000-$1250 | = $22 small delivery fee + fuel surcharge |
| Fleet & Carrier daily delivery >$1250 | = fuel surcharge only |

In addition we will be making a slight change to the existing fuel scale. The new scale is outlined below

| Fuel Price per Gallon | Surcharge |
|---|---|
| $0.00-$2.50 | $ - |
| $2.50-$2.99 | $ 3.00 |
| $3.00-$3.49 | $ 6.50 |
| $3.50-$3.99 | $ 9.50 |
| $4.00-$4.49 | $ 12.50 |
| $4.50-$4.99 | $ 15.50 |
| $5.00-$5.49 | $ 18.50 |
| $5.50-$5.99 | $ 21.50 |
| $6.00-$6.49 | $ 24.50 |
| $6.50-$6.99 | $ 27.50 |

If you need further information, please feel free to contact your sales representative.

Thank you for your business.
Sincerely,

Harry Dochelli
Senior Vice President Group Sales

If you have received this fax in error, please accept our apologies and call toll free 877-385-1440 to be removed from our list

## Exhibit 2



# You're important to us – you're a
# BIG DEAL

**Rubbermaid Commercial Products**

To show our appreciation, we have big deals for you!

ALL In-Stock Rubbermaid Commercial Products

# 10% OFF

2-Day Savings Event! March 26 & 27 Only!

## Offer Details

- Minimum of $500 total combined purchase to earn stated rebate amount
- Rebate will be paid out in the form of a Lagasse credit memo 6-8 weeks from the end of the promo period
- Orders must be invoiced within 10 business days of the end of the promotion to earn rebate
- Lagasse reserves the right to limit quantities
- Contracted pricing is excluded from this promotion
- Only applies to product in stock, while supplies last

Switch to email for all of the latest information on our promotions.
Email your customer ID, name, and email address to lagassecommunications@lagasseinc.com to get started.

lagassesweet.com ● Customer Care: 800-989-7487

Offer cannot be combined with other promotional offers.
All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors. If you have received this fax in error, please accept our apologies and call toll free 877.885.4440 to be removed from our list.

## More Big Deal Event savings are on the way!

Exhibit 3

03/27/2015 20:53   TO: TRUXSERV 15625944054   From: LagasseSweet 1504-736-5503   Page 1/1



You're important to us – you're a

# BIG DEAL

**Rubbermaid**
**Commercial Products**

To show our appreciation,
we have big deals for you!

ALL In-Stock
Rubbermaid
Commercial
Products

# 10% OFF

2-Day Savings Event!
March 26 & 27 Only!

### Offer Details

- Minimum of $500 total combined purchase to earn stated rebate amount
- Rebate will be paid out in the form of a Lagasse credit memo 6-8 weeks from the end of the promo period
- Orders must be invoiced within 10 business days of the end of the promotion to earn rebate
- Lagasse reserves the right to limit quantities
- Contracted pricing is excluded from this promotion
- Only applies to product in stock, while supplies last

Switch to email for all of the latest information on our promotions.
Email your customer ID, name, and email address to lagassecommunications@lagasseinc.com to get started.

lagassesweet.com • Customer Care: 800-989-7487

Offer cannot be combined with other promotional offers.

All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors. If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list.

## More Big Deal Event savings are on the way!

Exhibit 4

04/03/2015 12:53    To: RESTAURANT EQUIPMENT COMP  15625044054    From: LagasseSweet  1504-736-5583    Page  1/1



# BLITZ DEALS

## EARN 35% BACK ON SELECT RUBBERMAID ITEMS

### FOR ORDERS PLACED APRIL 5 – APRIL 18, 2015.

| ITEM # | DESCRIPTION | REBATE AMOUNT |
|--------|-------------|---------------|
| RCP 2957 BLA | Rubbermaid Commercial Deskside Plastic Wastebasket, Black, LRG 41.25 QT, EA | 35% |
| RCP 3540-75 BLU | Rubbermaid Commercial Slim Jim Recycling Container, Blue, 23 GAL, EA | 35% |
| RCP 6310 WHI | Rubbermaid Commercial Commercial-Grade Toilet Bowl Brush, White, EA | 35% |
| RCP 2640-43 BLA | Rubbermaid Commercial Brute Quiet Dolly, Black, EA | 35% |
| RCP 1835528 | Rubbermaid Commercial Pulse Mopping Kit, 18in, EA | 35% |
| RCP 3540 BLA | Rubbermaid Commercial Slim Jim Large Rectangular Waste Receptacle, Black, EA | 35% |
| RCP 2570-88 BEI | Rubbermaid Commercial GroundsKeeper Cigarette Waste Collector, Beige, 38in, EA | 35% |
| RCP 2955 BLA | Rubbermaid Commercial Deskside Plastic Wastebasket, Black, 13.63 QT, EA | 35% |
| RCP 2644 BEI | Rubbermaid Commercial Fiberglass Wastebasket, Beige, 40 QT, EA | 35% |
| RCP 6140 WHI | Rubbermaid Commercial Sanitary Napkin Receptacle with Rigid Liner, White, EA | 35% |
| RCP 3540-60 BLA | Rubbermaid Commercial Slim Jim with Venting Channels, Black, EA | 35% |
| RCP 9T80 YEL | Rubbermaid Commercial Vinyl Cleaning Cart Bag, Yellow, 34 GAL, EA | 35% |
| RCP R1639EHGR | Rubbermaid Commercial Aladdin Smokers' Station, EA | 35% |
| RCP 2957-73 BLU | Rubbermaid Commercial Deskside Recycling Container w/ We Recycle Symbol, EA | 35% |
| RCP 4212-88 BLA | Rubbermaid Commercial Floor and Carpet Sweeper, EA | 35% |

*Offer Details
- Promotion period: April 5th through April 18th, 2015
- Minimum of $1000 total combined purchase of above listed items to earn stated rebate amounts
- Rebate will be paid out in the form of a Lagasse credit memo 6-8 weeks from the end of the promo period
- Orders must be invoiced within 10 business days of the end of the promotion to earn rebate
- Lagasse reserves the right to limit quantities
- Contracted pricing is excluded from this promotion
- Only applies to product in stock, while supplies last

## www.lagassesweet.com * fax: 800-452-4277
## Customer Care: 1-800-989-7487

All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors
If you have received this fax in error, please accept our apologies and call toll free 877-385-4440 to be removed from our list.

Exhibit 5

04/09/2015 17:16    To: DO IT BEST CORPORATION  18470312805    From: LagasseSweet  1504-736-5583    Page  1/1



# You're important to us - you're a
# BIG DEAL

# 3M
### We're giving back to you, with some great big deals!

# SUPER SAVINGS
## on select 3M and SCOTCH-BRITE™ products.

### Promotional pricing good thru May 5, 2015

### Offer Details
- Special price listed per item. To access a file of applicable items contact your Lagasse sales manager
- Special price is available at time of purchase
- Lagasse reserves the right to limit quantities
- Contracted pricing is excluded from this promotion
- Only applies to product in stock, while supplies last

**Switch to email** for all of the latest information on our promotions. Email your customer ID, name, and email address to lagassecommunications@lagasseinc.com to get started.

lagassesweet.com • Customer Care: 800-989-7487

Offer cannot be combined with other promotional offers.
All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors. If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list.

## More Big Deal Event savings are on the way!
Exhibit 6



You're important to us - you're a

# BIG DEAL

We're showing our thanks, with some great big deals!





HERITAGE
Your can liner experts.

# ENJOY BIG SAVINGS
on select can liners.

Promotional pricing good
thru May 5, 2015

**Offer Details**

- Special price listed per item. To access a file of applicable items contact your Lagasse sales manager
- Special price is available at time of purchase
- Lagasse reserves the right to limit quantities
- Contracted pricing is excluded from this promotion
- Only applies to product in stock, while supplies last

**Switch to email** for all of the latest information on our promotions.
Email your customer ID, name, and email address to lagassecommunications@lagasseinc.com to get started.

lagassesweet.com • Customer Care: 800-989-7487

Offer cannot be combined with other promotional offers.
All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors.
If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list.

## More Big Deal Event savings are on the way!
Exhibit 7



**LAGASSE SWEET**

You're important to us – you're a

# BIG DEAL

# 3M

We're giving back to you, with some great big deals!

## SUPER SAVINGS on select 3M and SCOTCH-BRITE™ products.

Promotional pricing good thru May 5, 2015

### Offer Details
- Special price listed per item. To access a file of applicable items contact your Lagasse sales manager
- Special price is available at time of purchase
- Lagasse reserves the right to limit quantities
- Contracted pricing is excluded from this promotion
- Only applies to product in stock, while supplies last

**Switch to email** for all of the latest information on our promotions.
Email your customer ID, name, and email address to lagassecommunications@lagasseinc.com to get started.

lagassesweet.com • Customer Care: 800-989-7487

Offer cannot be combined with other promotional offers.
All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors. If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list.

## More Big Deal Event savings are on the way!
Exhibit 8

04/10/2015 08:30   To: TRU*SERV 15625944854   From: LagasseSweet   1504-736-5583   Page 1/1



# You're important to us – you're a
# BIG DEAL

## We're showing our thanks, with some great big deals!





HERITAGE
Your can liner experts.

# ENJOY BIG SAVINGS
## on select can liners.

Promotional pricing good
thru May 5, 2015

## Offer Details

- Special price listed per item. To access a file of applicable items contact your Lagasse sales manager
- Special price is available at time of purchase
- Lagasse reserves the right to limit quantities
- Contracted pricing is excluded from this promotion
- Only applies to product in stock, while supplies last

**Switch to email** for all of the latest information on our promotions.
Email your customer ID, name, and email address to lagassecommunications@lagasseinc.com to get started.

lagassesweet.com • Customer Care: 800-989-7487

Offer cannot be combined with other promotional offers.
All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors.
If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list.

## More Big Deal Event savings are on the way!
### Exhibit 9

04/15/2015 16:47   To: RESTAURANT EQUIPMENT COMP  15625944054   From: LagasseSweet  1504-736-5583   Page  1/1

   May 2015 Price Change Notification

Below is an overview of price changes effective May 1, 2015 unless otherwise stated:

| Vendor | Effective Date | Increase % | Comments |
|--------|----------------|------------|----------|
| Royal Paper | 05/01/15 | 5-9% | Chef hats, lemon wedge wrap & bags, griddle block/screen |

This communication serves as a general notice of anticipated changes to current pricing and provides an average cost change which LagasseSweet was notified of by April 15.

Please note these changes cover most vendors and products within our nationally stocked portfolio. Products that are only available in select branches may not be included. To receive item-specific pricing for your account, please visit www.lagassesweet.com.

---

**Electronic Pricing Tools Available 24/7 On LagasseSweet.com**

We have four electronic pricing tools available for your benefit available at www.lagassesweet.com

**Customized Pricing Report**
Updated in real time. Must be downloaded between the 17th and the last day of the month to see the next month's pricing.

**Future Price Report**
See your current pricing & next month's pricing on items purchased in the last 12 months.

**Item Search**
Search for items and see your current pricing on those items.

**Customized Price Emails**
Monthly email reports showing your current pricing on the items you purchase. Emails are sent out once per month, on the 23rd of each month.

---

If you have received this fax in error, please accept our apologies and call toll free: 877.395.4440 to be removed from our list.

Exhibit 10



# BLITZ DEALS

## EARN $14.00 BACK ON SELECT CASES OF FRESH PRODUCTS CURVE AIR FRESHENERS

### FOR ORDERS PLACED APRIL 19 – MAY 5, 2015

| ITEM # | DESCRIPTION | REBATE AMOUNT |
|--------|-------------|---------------|
| FRS RC30 CBL | Fresh Curve Air Freshener, Cotton Blossom, 10/BOX, 6/CS | $14.00 |
| FRS RC30 CME | Fresh Curve Air Freshener, Cucumber Melon, 10/BOX, 6/CS | $14.00 |
| FRS RC30 MAN | Fresh Curve Air Freshener, Mango, 10/BOX, 6/CS | $14.00 |
| FRS RC30 SAP | Fresh Curve Air Freshener, Spiced Apple, 10/BOX, 6/CS | $14.00 |

**\*Offer Details**

- *Promotion period: April 19th through May 5th, 2015*
- *Minimum of 6 cases total combined purchase of above listed items to earn stated rebate amounts*
- *Rebate will be paid out in the form of a Lagasse credit memo 6-8 weeks from the end of the promo period*
- *Orders must be invoiced within 10 business days of the end of the promotion to earn rebate*
- *Lagasse reserves the right to limit quantities*

## www.lagassesweet.com * fax: 800-452-4277
## Customer Care: 1-800-989-7487

All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors. If you have received this fax in error, please accept our apologies and call toll free 877-385-4440 to be removed from our list.

Exhibit 11

# ESSENDANT

April 23, 2015

It has been almost two months since we announced our intent to unify under a single company brand name. Since this time we have received positive feedback from associates, customers and suppliers. During this time, we have not been standing still.  A lot of our associates are working behind the scenes and building momentum for our official legal entity change.

We are excited to announce that we will be officially changing our name on June 1, 2015.  While many of you are anxious to begin the transition we ask that you wait until this date to update your systems, processes and paperwork to reflect this new name.  We will provide more information later on exactly how and what should be updated and/or modified to reflect our new entity.

While our official legal change date is June 1, not everything will carry the new name right from the start.  As you know, we are also going through a transformation to a single operating/IT platform, and as such many of the brand changes will be integrated into our existing work plan that spans the next six to eight months.  But no matter whether it is a simple brand/logo change, or one of our larger improvements to our business processes and capabilities, we are focused on making it easier for you to do business with us.

Our vision is to supply the essentials that unlock the potential of our partners and those they serve. And through our extensive nationwide, next-day fulfillment platform, our continued enhancement of digital services and our experienced and dedicated team, we look forward to enabling you to reach your full potential.

You can learn more about our transformation by visiting our website www.essendant.com. Thank you for your business and I look forward to our 'journey to Essendant' with you.

Thank you,

Harry Dochelli
Senior Vice President, Sales & Customer Care

If you have received this fax in error, please accept our apologies and call toll free 877.365.4440 to be removed from our list.

Exhibit 12



# BLITZ DEALS

## EARN UP TO $6.00 BACK ON SELECT CASES OF P&G ITEMS

### FOR ORDERS PLACED MAY 3 – MAY 16, 2015.

| ITEM # | DESCRIPTION | REBATE AMOUNT |
|--------|-------------|---------------|
| PGC 82027CT | MR. CLEAN MAGIC ERASER - ALL PURPOSE, 4/PK, 6PK/CS | $2.00 |
| PGC 88766CT | FEBREZE AIR EFFECTS ODOR ELIMINATOR, 9.7 OZ, 9/CS | $4.00 |
| PGC 92379 | BOUNTY W/ DAWN ROLL TOWELS, 8/3 ROLL | $6.00 |
| PGC 86502 | CHARMIN ULTRA STRONG BATHROOM TISSUE, 10/4 DBL ROLL | $4.50 |
| PGC 86775 | CHARMIN ULTRA SOFT BATHROOM TISSUE, 10/4 DBL ROLL | $4.50 |
| PGC 86809 | CHARMIN ULTRA SOFT BATH TISSUE, 2PLY, 1/18 MEGA ROLL | $4.00 |
| PGC 32987 | COMET DEODORIZING CLEANSER W/ BLEACH, 21 OZ, 24/CS | $4.00 |
| PGC 80168 | BOUNCE FABRIC SOFTENER SHEETS, 160 SHEETS/BX, 6 BX/CS | $6.00 |
| PGC 08886 | TIDE HE LAUNDRY DETERGENT, 100 OZ, 4/CS | $6.00 |
| PGC 13878 | TIDE ULTRA LIQUID LAUNDRY DETERGENT, 50 OZ, 6/CS | $6.00 |

**Offer Details*
- Promotion period: May 3rd through May 16th, 2015
- Minimum of 50 cases total combined purchase of above listed items to earn stated rebate amounts
- Rebate will be paid out in the form of a Lagasse credit memo 6-8 weeks from the end of the promo period
- Orders must be invoiced within 10 business days of the end of the promotion to earn rebate
- Lagasse reserves the right to limit quantities

## www.lagassesweet.com * fax: 800-452-4277
## Customer Care: 1-800-989-7487

All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors. If you have received this fax in error, please accept our apologies and call toll free 877-385-4440 to be removed from our list.

EXHIBIT 13



CORPORATION SERVICE COMPANY®

# Notice of Service of Process

**null / ALL**
**Transmittal Number: 14976162**
**Date Processed: 03/31/2016**

| Primary Contact: | Melinda Gourlie |
| --- | --- |
| | Essendant Management Services LLC |
| | 1 Parkway North |
| | Suite 100 |
| | Deerfield, IL 60015 |

| | |
| --- | --- |
| **Entity:** | Essendant Inc. |
| | Entity ID Number 2856631 |
| **Entity Served:** | Essendant, Inc. d/b/a Essendant and Essend^nt |
| **Title of Action:** | Craftwood Lumber Company vs. Essendant, Inc. |
| **Document(s) Type:** | Notice |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Lake County Circuit Court, Illinois |
| **Case/Reference No:** | 16 CH 358 |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 03/30/2016 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Federal Express |
| Sender Information: | Daniel F. Lula |
| | 949-797-1269 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 14983686**
**Date Processed: 04/01/2016**

Primary Contact: Melinda Gourlie
Essendant Management Services LLC
1 Parkway North
Suite 100
Deerfield, IL 60015

| | |
|---|---|
| **Entity:** | Essendant Inc. (Mc193846)<br>Entity ID Number  3495275 |
| **Entity Served:** | Essendant, Inc. |
| **Title of Action:** | Craftwood Lumber Company vs. Essendant, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Violation of State/Federal Act |
| **Court/Agency:** | Lake County Circuit Court, Illinois |
| **Case/Reference No:** | 16 CH 358 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 04/01/2016 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Michael D. Theisen<br>312-782-7320 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

CRAFTWOOD LUMBER COMPANY, AN ILLINOIS )
CORPORATON; CRAFTWOOD II, INC., A CALIFORNIA )
CORPORATION DBA BAY HARDWARE )
_____ )
_____ )
_____ )
                    Plaintiff(s) )
     vs. )       Gen No: 2016  CH  358 _____
                   )
ESSENDANT, INC., A DELAWARE CORPORATION )
DBA ESSENDANT; ESSENDANT CO., AN ILLINOIS )
CORPORATION DBA ESSENDANT )
_____ )
_____ )
_____ )
_____ )
                   Defendant(s) )

### ALIAS SUMMONS

**To each defendant:**

    You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, in the office of the Clerk of this Court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

**To the officer:**

    This summons must be returned by the officer or other person to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

**MAR 2 8 2016**

WITNESS _____

SEAL
OF
COURT

*Keith Brin*

_____
KEITH BRIN, Clerk of Court

Prepared by:
Attorney's Name: Michael D. Theisen

Address: One N. LaSalle Street, Suite 3000

City: Chicago             State: Illinois

Phone: 312-782-7320     Zip Code: 60602

Fax: 312-782-7138

ARDC: 6302075

(If service by facsimile transmission will be accepted, the telephone number of the plaintiff or plaintiff's attorney's facsimile machine is additionally required.)

Date of Service _____, 20_____ (to be inserted by officer on copy left with defendant or other person).

171-138 Rev 6/13

SHERIFF'S FEES

( Service and return ............................................... $ _____
(
( Miles_____ ................................................ $ _____
(
( Total ................................................................ $ _____

_____
Sheriff of _____ County

I certify that I served this summons on defendants as follows:

(a)-(Individual defendants – personal):
(The officer or other person making service, shall (a) identify as to sex, race and approximate age of the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant).

_____

_____

_____

_____

(b)-(Individual defendants -- abode):
By leaving a copy of the complaint at the usual place of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons. (The officer or other person making service, shall (a) identify as to sex, race and approximate age of the person, other than the defendant, with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with such person).

_____

_____

_____

and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of defendant | Mailing Address | Date of mailing |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(c)-(Corporate defendants):
By leaving a copy and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

| Defendant corporation | Registered agent, officer or agent | Date of Service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(d)-(Other service):

_____

_____

_____

_____ Sheriff of _____County

By: _____
(Deputy)

171-138 Rev 6/13

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

Craftwood Lumbar Company )
)
vs. )
) General No. 16 CH 358
Essendant, Inc., a Delaware Corporation )

F I L E D

MAR 04 2016

*Keith Brin*
CIRCUIT CLERK

## CERTIFICATE OF ATTORNEY – CIVIL DIVISION

1) Pursuant to Local Rule 3.01(c), I hereby certify that:

■ There has been no previous Voluntary or Involuntary Dismissal of the subject matter of this litigation.

☐ There has been a previous Voluntary or Involuntary Dismissal of the subject matter of this litigation and at the time of dismissal that Case No. _____ was assigned to the

Honorable _____

■ There is no other litigation presently pending in the county involving these parties.

☐ There is other litigation presently pending in the county involving the parties to or subject matter to this lawsuit and that case(s) is/are assigned Case No.(s)_____ which is/are assigned to the

Honorable _____

2) Are you seeking any injunctive relief?

■ Yes - Select the appropriate case subtype under the Chancery-CH heading below.
☐ No - Select the appropriate non-Chancery case subtype below.

This data is being gathered for administrative purposes and will not be used for any other purpose.

**Arbitration – AR**
☐ Arbitration/Tort
☐ Arbitration/Contract

**Chancery – CH**
☐ Residential Mortgage Foreclosure
☐ Residential Mortgage Foreclosure w/Mechanics Lien
☐ Non-Residential Mortgage Foreclosure
☐ Injunction
☐ Specific Performance
☐ Mechanics Lien Foreclosure
☐ Complaint for Rescission
☐ Partition
☐ Quiet Title
■ Class Action
☐ Structured Settlement
☐ Miscellaneous

**Eminent Domain – ED**
☐ Eminent Domain
☐ Condemnation

**Law Magistrate – LM**
☐ Forcible Entry and Detainer
☐ Replevin
☐ Detinue
☐ Distress for Rent
☐ Enroll Judgment
☐ Confirm Arbitrator's Award
☐ Confession of Judgment

**Law – L**
☐ Tort
☐ Contract
☐ Product Liability
☐ Medical Malpractice
☐ Legal Malpractice
☐ Forcible Entry and Detainer
☐ Replevin
☐ Accounting Malpractice
☐ Enroll Judgment
☐ Confirm Arbitrator's Award

**Municipal Corporation – MC**
☐ Annexation
☐ Disconnection

**Miscellaneous Remedy – MR**
☐ Declaratory Judgment
☐ Corporation Dissolution
☐ Election Contest
☐ Mandamus
☐ Habeas Corpus
☐ Review of Administrative Proceeding/Statutory
☐ Review of Administrative Proceeding/Certiorari
☐ Quo Warranto
☐ Change of Name
☐ Forfeiture
☐ Fugitive from Justice
☐ Search Warrant
☐ Application for Eavesdropping Device
☐ Registration of Foreign Judgment
☐ Request for Subpoena/ Foreign Jurisdiction
☐ Non-Attendance of Jurors
☐ Miscellaneous

**Probate – P**
☐ Decedent/Testate > $15,000
☐ Decedent/Intestate > $15,000
☐ Decedent/Testate $15,000 or less
☐ Decedent/Intestate $15,000 or less
☐ Guardianship of Person/ Disabled Person
☐ Guardianship of Estate/ Disabled Person
☐ Guardianship of a Person and Estate/Disabled Person
☐ Guardianship of Person/ Minor
☐ Guardianship of Estate/Minor
☐ Guardianship of Person and Estate/Minor
☐ Proof of Heirship Alone

**Tax – TD**
☐ Deeds

**Tax – TX**
☐ Objections
☐ Disposition of Collections of Judgment of Settlement
☐ Sale in Error

Print Name  Michael D. Theisen

Signature _____

■ Attorney     ☐ Pro-se

171-366 (Rev 11/15)

IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

COUNTY DEPARTMENT, CHANCERY DIVISION

**16 CH 358**

| | |
|---|---|
| Craftwood Lumber Company, *et al.*, | Case No. |
| Plaintiffs, | |
| v. | **FILED** |
| Essendant Inc., *et al.*, | **MAR 0 4 2016** |
| Defendants. | *Keith Brin* CIRCUIT CLERK |

## PLAINTIFF'S PROTECTIVE MOTION FOR CLASS CERTIFICATION [735 ILCS 5/2-801]

NOW COME Plaintiffs Craftwood Lumber Company and Craftwood II, Inc., dba

Bay Hardware ("Plaintiffs"), by their attorneys Tews, Theisen & Theisen, on a Protective

Motion for Class Certification and state as follows:

1. Plaintiffs Craftwood Lumber Company and Craftwood II hereby move this

Court, under authority of 735 ILCS 5/2-801, for an order certifying the following Plaintiff

Class:

> All persons and entities that were subscribers of facsimile
> telephone numbers to which material that discusses, describes,
> or promotes the property, goods or services of Defendants, or
> any of them, was sent via facsimile transmission (to 10 or more
> facsimile telephone numbers) on or after May 1, 2011,
> including, without limitation, the faxes attached as Exhibits 1
> through 13 to the Complaint (the "Plaintiffs Class").

2. This case is appropriate for class treatment for the following reasons:

(a) The proposed Class consists of thousands of Class members with

claims too small to warrant individual actions. The Class is therefore

1

so numerous that joinder of all members is impracticable.

(b)     There are questions of law and fact common to all Class members,
        and those common questions predominate over individual questions,
        if any.

(c)     Plaintiffs and their attorneys will provide fair and adequate
        representation to the Class.

(d)     A class action is an appropriate method to resolve this dispute and
        provides the best means for the fair and efficient adjudication of Class
        member claims.

3.      Plaintiffs have filed this motion at the outset of the case to invoke the
protection afforded under Illinois law against an attempt by Defendants to pick off
plaintiffs as class representatives and thereby avoid class-wide accountability for their
illegal fax-blasting operations.  *See Ballard RN Ctr., Inc. v. Kohll's Pharmacy and
Homecare Inc.*, No. 118644, 2015 IL 118644, at *10 (Oct. 22, 2015); *Barber v. American
Airlines, Inc.*, 241 Ill. 2d 450, 456 (2011).  Plaintiffs respectfully request that the Court
continue hearing on the motion following a period of discovery directed to class
certification issues, then permit amended briefing on class certification based on the
additional facts and arguments developed in discovery.

4.      In support of this motion, Plaintiffs are concurrently filing their
Memorandum in Support of Protective Motion for Class Certification and the Affidavits of

David W. Brunjes, Darryl Cordero, and Diana B. Newton.

WHEREFORE, Plaintiffs pray that the Court enter and continue the motion to permit discovery on class certification issues, then certify the Class as proposed above and designate Plaintiffs as Class Representatives and their attorneys as Class Counsel.

DATED:  March 2, 2016                    TEWS, THEISEN & THEISEN


By:  _____
                    Michael D. Theisen

Michael D. Theisen
Attorney at Law
Tews, Theisen & Theisen
One North LaSalle Street, Suite 3000
Chicago, Illinois 60602
Office: 312-782-7320
Fax: 312-782-7138
Cell: 847-275-7686
Email:  mdt@tewstheisenlaw.com

Attorneys for Plaintiffs Craftwood Lumber
Company and Craftwood II, Inc., dba Bay
Hardware, and for all others similarly
situated

4821-9642-8846.1

3

## IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Craftwood Lumber Company, *et al.*, | Case No. **16 CH 358** |
| Plaintiffs, | |
| v. | **FILED** |
| Essendant Inc., *et al.*, | |
| Defendants. | MAR 0 4 2016 |

STATE OF ILLINOIS )
)
COUNTY OF LAKE )

*Keith Brin*
CIRCUIT CLERK

### Affidavit Of Diana B. Newton

I, Diana B. Newton, being first duly sworn and under oath, state the following to be true of my own personal knowledge, information and belief:

1.      I am an officer of Craftwood II, Inc., one of the plaintiffs in this action.  Craftwood II, Inc. does business under the name "Bay Hardware" in downtown Seal Beach, California.  I am in charge of the store's day-to-day operations.

2.      I received a B.S. degree from Indiana University Bloomington and attended the Quinlan School of Business, Loyola University Chicago in pursuit of a M.B.A. degree.  I suspended my M.B.A. studies in order to manage Bay Hardware.  I intend to complete my M.B.A. studies when my schedule allows.  I have worked in the hardware business since 1996 and, in addition, I worked for

almost three years as a Director of a Huntington Learning Center (where I was responsible for managing the entire center, including up to thirty part-time teachers and two full time staff members). I also have been President of the Seal Beach Chamber of Commerce during 2013-2014.

3.     I caused Bay Hardware to bring this lawsuit and request appointment as class representative because of our desire to stop, as much as possible, junk faxes and to obtain monetary and other relief for the class. I believe junk faxes are a vexing problem for businesses and consumers. Junk faxes disrupt our business operations, require someone to go through them to dispense with them, and force us to consume paper and toner against our wishes.

4.     Bay Hardware has been the subscriber of the telephone number (562) 594-4054 for many years. Throughout this time, that telephone number has been connected to a fax machine located in our office. On a regular basis we receive, at this fax machine, unsolicited faxes of an advertising nature from persons and companies with whom we do not do business.

5.     On March 3, 2015, March 27, 2015, April 3, 2015, April 9, 2015, April 10, 2015, April 15, 2015, April 16, 2015, April 23, 2015, and April 30, 2015, Bay Hardware received faxes from "LaGasse Sweet" via facsimile transmission, true and correct copies of which are attached hereto as Exhibits 1, 2,

4, 5, 8, 9, 10, 11, 12, and 13 (these exhibit numbers match the numbering of the exhibits to the Complaint). Each of these faxes was sent to Bay Hardware's facsimile telephone number (562) 594-4054. I am informed that Bay Hardware may have received other facsimile advertisements from Defendants, but Bay Hardware did not retain copies of those. To the best of my knowledge, information and belief, after making reasonable inquiry, Bay Hardware has had no business relationship with Defendants, and did not give Defendants prior express permission to send Bay Hardware, by facsimile transmission, any advertisements.

6.      I complained on behalf of Bay Hardware on approximately 75 occasions to the Federal Communications Commission about junk faxes sent to Bay Hardware. To my knowledge the FCC has not taken any action in connection with any of Bay Hardware's complaints. My experience has convinced me that the only way to stop junk faxes is by legal action to enforce the anti-junk fax laws.

7.      I recognize Bay Hardware's responsibilities as a class representative to fairly and adequately protect the interests of the class members in the case. I am prepared to discharge those responsibilities in the interest of the proposed class. I am committed to keeping abreast of developments in the case and to exercise my independent judgment in order to discharge Bay Hardware's duties as class representative. Bay Hardware also will not place its interests ahead of the interests of the class members. I know of no antagonistic or conflicting interests between

Bay Hardware and class members.

8.     Neither Bay Hardware nor I have been provided any financial consideration to prosecute this case, nor have we been promised any such consideration.  I understand that if there is a successful class recovery Bay Hardware, as class representative, may request an incentive award, but that any incentive award is entirely discretionary with the court.  I understand and accept that, aside from any incentive award and any recovery shared with members of the class, Bay Hardware cannot receive any additional award, monies, or other benefits in connection with, or arising out of, the case.  I also understand that if there is a successful class recovery, Bay Hardware's attorneys will ask the Court for payment of their fees and costs incurred in rendering services to Bay Hardware and the class.

_____
Diana B. Newton

I, the undersigned, a Notary Public in and for the State of Illinois, hereby certify that Diana B. Newton, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand this the 23rd day of February, 2016.

_____
          Notary Public

                              My commission expires:

-4-

## CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Orange_

On _February 23, 2016_ , before me, K.D. McKendell, Notary Public, personally appeared _Diana B. newton_ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

_K.D. McKendell_

K.D. McKendell
My Commission Expires: May 14, 2017
Notary Public in and for
State of California, County of Los Angeles                    (Seal)

K. D. McKENDELL
COMM. #2020240
Notary Public - California
Los Angeles County
My Comm. Expires May 14, 2017

---

### OPTIONAL

*Description of attached document:*

Document Title: _Affidavit of Diana B. newton_

Date of Document: _none_                    Number of Pages: _5_

Additional Signers Not Named Above: _none_

Notary Long Beach – www.notarylongbeach.com

# IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS
# COUNTY DEPARTMENT, CHANCERY DIVISION

Craftwood Lumber Company, *et al.*,

        Plaintiffs,

       v.

Essendant Inc., *et al.*,

        Defendants.

Case No.

**16 CH 358**

**FILED**

MAR 04 2016

*Keith Brin*
CIRCUIT CLERK

STATE OF ILLINOIS    )
                    )
COUNTY OF LAKE     )

### Affidavit Of David Brunjes

    I, David Brunjes, being first duly sworn and under oath, state the following to be true of my own personal knowledge, information and belief:

    1.    I am President of Craftwood Lumber Company ("Craftwood"), one of the named plaintiffs in this action. Craftwood, an Illinois Corporation, does business under the name "Craftwood Lumber & Hardware" from its Highland Park store. Craftwood is one of the larger hardware stores in Illinois, and serves primarily the North Shore area. I, together with my wife, operate Craftwood.

    2.    The other named plaintiff in this action, Craftwood II, Inc., ("Bay Hardware"), is a California corporation that does business under the name "Bay

Hardware" from its Seal Beach, California location. Craftwood and Bay Hardware are related companies. They have officers, directors, and shareholders in common.

3.    I attended the University of Illinois, School of Business Administration, and majored in accountancy. I received my bachelor of arts degree from that institution in 1976. In 1976, I was certified as public accountant in Illinois. I retain my membership as a certified public accountant, but I currently do not practice public accounting.

4.    From 1976 to 1979, I worked in the audit department of Coopers & Lybrand. From 1979 to 1988, I worked for Mark Controls Corporation, a publicly listed company, and several of its units, starting as Corporate Audit Department Manager and concluding my employment as Director of Sales & Marketing (FlowSeal, a unit of Mark Control Corporation). From 1988 to the present, I have worked at Craftwood.

5.    I caused Craftwood to bring this lawsuit and request appointment as a class representative because of our desire to stop, as much as possible, junk faxes and to obtain monetary and other relief for the class. I believe junk faxes are a vexing problem for businesses and consumers. Junk faxes disrupt our business operations, require someone to go through them to dispense with them, and force us to consume paper and toner against our wishes.

6.    For many years Craftwood has been the subscriber of the telephone

-2-

number (847) 831-2805. Throughout this time, that telephone number has been connected to a fax machine located in our office. On a regular basis we receive, at this fax machine, unsolicited faxes of an advertising nature from persons and companies with whom we do not do business.

7. On March 27, 2015, and April 9, 2015, Craftwood received faxes from Defendants via facsimile transmission, true and correct copies of which are attached hereto as Exhibits 3, 6, and 7 (these exhibit numbers match the numbering of the exhibits to the Complaint). These faxes were sent to Craftwood's facsimile telephone number (847) 831-2805. I am informed that Craftwood may have received other faxed advertisements from Defendants, but Craftwood did not retain copies of those. To the best of my knowledge, information and belief, after making reasonable inquiry, Craftwood has had no business relationship with Defendants, and did not give Defendants prior express permission to send Craftwood, by facsimile transmission, any advertisements.

8. I have responsibility for dealing with junk faxes received by Craftwood. I have filed more than 280 complaints with the Federal Communications Commission ("FCC") regarding junk faxes sent to Craftwood. To my knowledge the FCC has not taken any action in connection with any of Craftwood's complaints. My experience has convinced me that the only way to stop junk faxes is by legal action to enforce the anti-junk fax laws.

9.      I recognize Craftwood's responsibilities as a class representative to fairly and adequately protect the interests of the class members in the case. I am prepared to discharge those responsibilities in the interest of the proposed class. I am committed to keeping abreast of developments in the case and to exercise my independent judgment in order to discharge Craftwood's duties as class representative. Craftwood also will not place its interests ahead of the interests of the class members. I know of no antagonistic or conflicting interests between Craftwood and class members.

10.      Neither Craftwood nor I have been provided any financial consideration to prosecute this case, nor have we been promised any such consideration. I understand that if there is a successful class recovery Craftwood, as class representative, may request an incentive award, but that any incentive award is entirely discretionary with the court. I understand and accept that, aside from any incentive award and any recovery shared with members of the class, Craftwood cannot receive any additional award, monies, or other benefits in connection with, or arising out of, the case. I also understand that if there is a successful class recovery, Craftwood's attorneys will ask the Court for payment of their fees and costs incurred in rendering services to Craftwood and the class.

David Brunjes

-4-

I, the undersigned, a Notary Public in and for the State of Illinois, hereby certify that David Brunjes, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand this the 23rd day of February 2016.

_____
Notary Public

My commission expires:

```
"OFFICIAL SEAL"
DEBORAH A EVANS
Notary Public, State of Illinois
My Commission Expires 3/26/2018
```

4826-1736-2222.1

-5-

03/27/2015 14:12   To: DO IT BEST CORPORATION  18470312005   From: LagasseSweet  1504-736-5583   Page 1/1


LAGASSE SWEET

You're important to us – you're a

# BIG DEAL

To show our appreciation, we have big deals for you!

**Rubbermaid**
Commercial Products

ALL In-Stock Rubbermaid Commercial Products

# 10% OFF

**2-Day Savings Event!**
**March 26 & 27 Only!**

### Offer Details

- Minimum of $500 total combined purchase to earn stated rebate amount
- Rebate will be paid out in the form of a Lagasse credit memo 6-8 weeks from the end of the promo period
- Orders must be invoiced within 10 business days of the end of the promotion to earn rebate
- Lagasse reserves the right to limit quantities
- Contracted pricing is excluded from this promotion
- Only applies to product in stock, while supplies last

Switch to email for all of the latest information on our promotions.
Email your customer ID, name, and email address to lagassecommunications@lagasseinc.com to get started.

lagassesweet.com ● Customer Care: 800-989-7487

Offer cannot be combined with other promotional offers.
All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors.
If you have received this fax in error, please accept our apologies and call toll free 877.365.4440 to be removed from our list.

## More Big Deal Event savings are on the way!

Exhibit 3

04/09/2015 17:16    To: DO IT BEST CORPORATION 18476312885    From: LagasseSweet 1504-736-5583    Page 1/1



# You're important to us - you're a
# BIG DEAL

# 3M

We're giving back to you, with some great big deals!

# SUPER SAVINGS on select 3M and SCOTCH-BRITE™ products.

## Promotional pricing good thru May 5, 2015

### Offer Details

- Special price listed per item. To access a file of applicable items contact your Lagasse sales manager
- Special price is available at time of purchase
- Lagasse reserves the right to limit quantities
- Contracted pricing is excluded from this promotion
- Only applies to product in stock, while supplies last

**Switch to email** for all of the latest information on our promotions.
Email your customer ID, name, and email address to lagassecommunications@lagasseinc.com to get started.

lagassesweet.com • Customer Care: 800-989-7487

Offer cannot be combined with other promotional offers.
All orders are subject to terms and conditions. Prices are subject to change without notice. LagasseSweet is not responsible for typographical errors.
If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list.

## More Big Deal Event savings are on the way!
Exhibit 6

04/09/2015 18:52    To: DO IT BEST CORPORATION  18478312805    From: LagasseSweet  1504-736-5593    Page 1/1



You're important to us - you're a

# BIG DEAL

We're showing our thanks, with some great big deals!







HERITAGE
Your can liner experts.

# ENJOY BIG SAVINGS
## on select can liners.

**Promotional pricing good thru May 5, 2015**

### Offer Details

- Special price listed per item. To access a file of applicable items contact your Lagasse sales manager
- Special price is available at time of purchase
- Lagasse reserves the right to limit quantities
- Contracted pricing is excluded from this promotion
- Only applies to product in stock, while supplies last

**Switch to email** for all of the latest information on our promotions.
Email your customer ID, name, and email address to lagassecommunications@lagasseinc.com to get started.

lagassesweet.com • Customer Care: 800-989-7487

Offer cannot be combined with other promotional offers.
All orders are subject to terms and conditions, Prices are subject to change without notice, LagasseSweet is not responsible for typographical errors,
if you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list.

## More Big Deal Event savings are on the way!
Exhibit 7



## IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Craftwood Lumber Company, *et al.*, | Case No. CH |
| Plaintiffs, | **16 CH358** |
| v. | |
| Essendant Inc., *et al.*, | **FILED** |
| Defendants. | MAR 0 4 2016 |
| | *Keith Brin*<br>CIRCUIT CLERK |

### AFFIDAVIT OF C. DARRYL CORDERO

I, C. Darryl Cordero, being first duly sworn and under oath, state the following to be true of my own personal knowledge, information and belief:

1.    I am an attorney duly licensed to practice in the state of California, and partner of the law firm Payne & Fears LLP.  I will be filing an application for admission pro hac vice in this Court after the filing of Plaintiffs' Complaint and Protective Motion for Class Certification.  I seek to represent proposed Plaintiffs/proposed class representatives Craftwood Lumber Company and Craftwood II (dba Bay Hardware) and the putative class in this action.  The facts stated in this declaration are of my own personal knowledge and, if called and sworn as a witness, I could and would competently testify with respect thereto.  This declaration is submitted in support of Plaintiffs' Protective Motion for Class Certification.

2.     This declaration addresses my background and experience handling complex litigation, including class actions for violations of the federal anti-junk fax law, my commitment to prosecute this case vigorously on behalf of the proposed class, and Essendant Inc.'s (formerly known as Union Stationers Inc.) 2014 10-K.

**Legal Background and Experience in Junk Fax Class Actions**

3.     I am attorney with over 30 years' litigation experience. After graduating from Harvard Law School in 1981 I served as law clerk to the Hon. Harry Lee Hudspeth, United States District Judge for the Western District of Texas. After completing my clerkship I was admitted to practice in the State of California in October 1983. I am admitted to practice before the United States Supreme Court, the United States Court of Appeals, Second Circuit, the United States Court of Appeals, Ninth Circuit, all federal district courts in the state of California, the United States District Court for the Northern District of Illinois, and the United States District Court for the Eastern District of Wisconsin. I have been lead counsel in complex litigation in federal and state courts throughout the country and coordinating counsel for reinsurance litigation in Bermuda.

4.     I am a business litigator. My practice concentrates on complex, high-stakes litigation, and is national in scope. I have represented clients in litigated matters in California, Florida, Illinois, Missouri, New Mexico, New York, New Jersey, and Wisconsin. I also have represented clients in connection with legal disputes in courts

-2-

outside the United States. I have considerable experience in antitrust, RICO, health care, and complex insurance disputes of all types (insurance coverage, insurance program disputes, reinsurance, reinsurance brokerage, and managing general agent issues).

5.       For the past 25 years I have served as counsel in class action litigation over a wide range of subject matters, including self-funded liability insurance programs, Medicaid reimbursement, and consumer cases. For the past ten years I have served as co-lead counsel for several major actions for violation of the federal anti-junk fax law, the Telephone Consumer Protection Act of 1991, and the regulations promulgated under that act by the Federal Communications Commission. In the course of my work in TCPA cases for the past decade, I have read virtually every FCC publication pertaining to junk faxes and have read literally hundreds of decisions by courts throughout the country in cases involving illegal junk faxes.

6.       Among other cases, I have served as co-lead class counsel in the following matters:

a.       Between 2006 and 2009 I prosecuted an action involving nearly 100,000 class members against "Quiznos" entities and Premier Global Services. (*Gibson & Co. Ins. Brokers v. Quiznos Corp., et al.*, U.S. Dist. Ct., Cent. Dist. Cal., No. CV06-5849 PSG.) The *Quiznos* case was settled on a class-wide, claims-made basis (while motion for class certification was pending) through the payment of over $7.5 million by

the defendants. Class members received $450 per fax, net of attorneys' fees and class notice and administration costs. The class settlement was finally approved in February 2009.

b.     Between 2010 and 2013 I prosecuted another case involving over 600,000 transmissions of 149 junk faxes to 24,000 class members in Los Angeles Superior Court. (*Universal Health Resources v. MDC Acquisition Co., et al.*, No. BC 415244.) In February and March 2012, I negotiated a mediated settlement under which the defendants paid $7.2 million to the class. (Settlement was later approved by the Hon. John S. Wylie of the superior court's complex case unit.)

c.     Between 2012 and 2014 I prosecuted a TCPA class case against Tomy International in the Central District of California. (*Craftwood II, Inc., dba Bay Hardware, v. Tomy International, Inc.*, No. SACV12-1710DOC(ANx), U.S. Dist. Ct., Cent. Dist. Cal.) Last year we negotiated a $10 million settlement of this case; the settlement was approved by Judge David O. Carter on March 3, 2015. Under the settlement, class members received $335 per junk fax after payment of attorneys' fees and all costs of notice and claim administration.

d.     In 2014 I achieved a record $40 million class settlement in the Interline Brands junk fax class litigation pending in the Northern District of Illinois. (*Craftwood Lumber Co. v. Interline Brands*, No 1:1-cv-04462.) On March 23, 2015, the

settlement was granted final approval by the Hon. Amy J. St. Eve of the Northern District of Illinois. I believe based on my practice experience that this was the largest dollar settlement of any junk fax case in the history of the TCPA.

> e.    In 2014 I negotiated a $15 million class recovery in the PharMerica junk fax class action (*Pines Nursing Home (77) Inc. v. PharMerica Corp.*, No. 1:13-23924-CIV-MOORE/TORRES). The settlement received final approval from the Hon. K. Michael Moore, Chief Judge of the Southern District of Florida, in November 2015.

7.    I have also prosecuted other types of class actions. In the late 1980s, I represented a group of California hospitals that challenged Medi-Cal reimbursement practices of the State Department of Health Services (*Goleta Valley Comm. Hosp., et al., v. State Dep't of Health Services*). In that case, I obtained substantial relief for the class following a favorable summary judgment ruling.

8.    Between 1994 and 2001 I was lead court-appointed counsel for a class of over 600 California hospitals in the United States District Court for the Eastern District of California (*Loma Linda Univ. Med. Ctr., et al. v. Farmers Group, Inc., et al.*, No. CIV-94-681-WBS). The hospitals challenged Farmers Group's accountings for a California hospital self-insurance program in which, the hospitals contended, Farmers had improperly retained program surplus from the hospitals. In September 2000, following a phase I trial and arbitration hearing, Chief Judge William B. Shubb gave final approval to

a $51 million common-fund recovery I had negotiated for the hospital class.

**Craftwood and Bay Hardware Have Previously Performed as Class Representatives**

9.    I worked closely with Diana Newton on the above-referenced *TOMY International* class case. I believe that she, on behalf of Bay Hardware, fully performed the obligations of the class representative in that case. The court appointed Bay Hardware class representative for the class of TOMY fax advertising recipients. No class member objected to the settlement of that case, and only a handful of class members requested exclusion. On March 3, 2015, Judge Carter entered an order awarding Bay Hardware an incentive award of $15,000, the full amount requested, in recognition of its initiative and efforts in prosecuting the case on the class's behalf.

10.    I also worked closely with David W. Brunjes on the above-referenced *Interline Brands* class case. I believe that he, on behalf of Craftwood, fully performed the obligations of the class representative in that case. The court appointed Craftwood class representative for the class of TOMY fax advertising recipients. No class member objected to the settlement of that case, and only a handful of class members requested exclusion. On March 23, 2015, the Hon. Amy J. St. Eve of the Northern District of Illinois entered an order awarding Craftwood an incentive award of $25,000, the full amount requested.

## Commitment to the Case

11.     Based on the above, I believe that I have the experience, knowledge and resources (including through my co-counsel) available to me to adequately represent and protect the interests of the putative class in this case. My firm, Payne & Fears LLP, is a firm of about 55 attorneys in seven offices. The firm and are committed to prosecute this case diligently on behalf of the putative class, as we have in numerous other class prosecutions under the TCPA.

12.     In my experience, copies of fax advertisements received and retained by the class representatives are often the "tip of the iceberg" in terms of the number of fax advertisements sent by defendants during the class period. Examples of this include the following cases (all referenced earlier in this declaration): In *Gibson & Co. v. Quiznos*, the named plaintiff received two transmissions of only one junk fax, but discovery revealed that the defendants sent more than 125,000 transmissions of the same junk fax to about 100,000 recipients. In *Universal Health Resources*, the named plaintiff had retained only 12 copies of fax advertisements. Through discovery, we ascertained that one or more of the defendants sent 149 advertisements during the class period in over 600,000 facsimile transmissions and that the named plaintiff had been sent over 90 fax transmissions. In the *TOMY* case, the named plaintiff (Bay Hardware, the same plaintiff as in this case) had retained only one copy of a fax advertisement. Through discovery, we ascertained that 159 fax advertisements had been sent during the class period in at

-7-

least 113,000 facsimile transmissions. In the *Interline Brands* case, two junk faxes were retained by Craftwood. Through discovery, we ascertained that the defendants sent over more than 750,000 facsimile transmissions of over 1,500 junk fax broadcasts during the class period.

### Essendant Inc.'s 2014 10-K

13. In preparing this protective class certification motion, I reviewed several of Essendant Inc.'s (formerly known as United Stationers Inc.) filings with Securities Exchange Commission, including its 2014 10-K filing. A true and correct copy of the first three pages of this filing is attached hereto as Exhibit 14.

### This Motion Protects Against Potential Defense "Pick-Off" Attempts

14. The purpose of Plaintiffs' motion is to protect against a potential pick-off attempt from Defendants in an effort to avoid class-wide accountability for their violations. The Illinois Supreme Court has held that defense pick-off attempts are ineffective to moot a plaintiff's claims if the plaintiff has filed a motion for class certification. *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare Inc.*, No. 118644, 2015 IL 118644, at *10 (2015). We have therefore filed this motion out of an abundance of caution to place Plaintiffs within this safe harbor. I recognize that discovery is necessary to have a fully-developed record for an informed class certification

decision, and for that reason ask the Court to continue hearing and further briefing on the motion following a period of discovery.

I hereby declare under penalty of perjury under the laws of the state of Illinois that the foregoing is true and correct. Executed February 29, 2016, at Irvine, California.

_____
C. Darryl Cordero

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not to the truthfulness, accuracy, or validity of that document

State of California )
                    )
County of Orange    )

Subscribed and sworn to (or affirmed) before me on this _29th_ day of _February_, 2016 by _Charles Darryl Cordero_ _____, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

MARITZA I. HULKE
Commission # 2075527
Notary Public - California
Orange County
My Comm. Expires Aug 19, 2018

_____
Signature of Notary Public

4840-3926-0973.5

-9-

10-K 1 ustr-10k_20141231.htm 10-K

**United States**
**Securities and Exchange Commission**
Washington, DC 20549

## FORM 10-K

(Mark One)

☒     ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2014

or

☐     TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

Commission file number: 0-10653

# UNITED STATIONERS INC.

(Exact Name of Registrant as Specified in its Charter)

| | |
|---|---|
| Delaware | 36-3141189 |
| (State or Other Jurisdiction of | (I.R.S. Employer |
| Incorporation or Organization) | Identification No.) |

One Parkway North Boulevard
Suite 100
Deerfield, Illinois 60015-2559
(847) 627-7000

*(Address, Including Zip Code and Telephone Number, Including Area Code, of Registrant's Principal Executive Offices)*

| | |
|---|---|
| Securities registered pursuant to | |
| Section 12(b) of the Act: | Name of Exchange on which registered: |
| Common Stock, $0.10 par value per share | NASDAQ Global Select Market |
| *(Title of Class)* | |

Securities registered pursuant to Section 12(g) of the Act:

None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.

Yes ☒    No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.

Yes ☐    No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

Yes ☒    No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (Section 229.405 of this chapter) is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☒

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 and Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).

Yes ☒    No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See the definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act (Check one):

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ (Do not check if a smaller reporting company) | Smaller reporting company | ☐ |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).

Yes ☐    No ☒

The aggregate market value of the common stock of United Stationers Inc. held by non-affiliates as of June 30, 2014 was approximately $1.468 billion.

On February 13, 2015, United Stationers Inc. had 38,563,203 shares of common stock outstanding.

**Documents Incorporated by Reference:**

Certain portions of United Stationers Inc.'s definitive Proxy Statement relating to its 2015 Annual Meeting of Stockholders to be filed within 120 days after the end of United Stationers Inc.'s fiscal year, are incorporated by reference into Part III.

UNITED STATIONERS INC.
FORM 10-K
For The Year Ended December 31, 2014

TABLE OF CONTENTS

Page No.

### Part I

Item 1.   Business                                                                                          1
          Executive Officers of the Registrant                                                              4
Item 1A.  Risk Factors                                                                                      6
Item 1B.  Unresolved Comment Letters                                                                        9
Item 2.   Properties                                                                                        9
Item 3.   Legal Proceedings                                                                                 9
Item 4.   Mine Safety Disclosure                                                                            9

### Part II

          Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity
Item 5.   Securities                                                                                       10
Item 6.   Selected Financial Data                                                                          13
Item 7.   Management's Discussion and Analysis of Financial Condition and Results of Operations            14
Item 7A.  Quantitative and Qualitative Disclosures About Market Risk                                       25
Item 8.   Financial Statements and Supplementary Data                                                      29
Item 9.   Changes in and Disagreements With Accountants on Accounting and Financial Disclosure             63
Item 9A.  Controls and Procedures                                                                          63

### Part III

Item 10.  Directors, Executive Officers and Corporate Governance                                           64
Item 11.  Executive Compensation                                                                           64
Item 12.  Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters    64
Item 13.  Certain Relationships and Related Transactions, and Director Independence                        64
Item 14.  Principal Accounting Fees and Services                                                           64

### Part IV

Item 15.  Exhibits and Financial Statement Schedules                                                       65

          Signatures                                                                                       69
          Schedule II—Valuation and Qualifying Accounts                                                    70

PART I

ITEM 1.    BUSINESS.

General

United Stationers Inc. is a leading national wholesale distributor of workplace essentials, with consolidated net sales of $5.3 billion. United stocks a broad assortment of over 160,000 products, including technology products, traditional office products, office furniture, janitorial and breakroom supplies, industrial supplies, and automotive aftermarket tools and equipment. The Company's network of 77 distribution centers allows it to ship products to approximately 30,000 reseller customers, enabling the Company to ship most products overnight to more than 90% of the U.S. and next day delivery to major cities in Mexico and Canada. The Company also has operations in Dubai, United Arab Emirates (UAE). The Company also operates as an online retailer which sells direct to end consumers.

Our strategy is comprised of three key elements:

1) Strengthen our core office, janitorial, and breakroom business with a common operating and IT platform, an aligned customer care and sales team, and advanced digital services,

2) Win online by growing our business-to-business (B2B) sales with major e-commerce players and enabling the online success of our resellers by providing digital capabilities and tools to support them, and

3) Expand and diversify our business into higher growth and higher margin channels and categories.

Execution on these priorities will allow us to become the fastest and most convenient solution for workplace essentials.

Except where otherwise noted, the terms "United" and "the Company" refer to United Stationers Inc. and its consolidated subsidiaries. The parent holding company, United Stationers Inc. (USI), was incorporated in 1981 in Delaware. USI's only direct wholly owned subsidiary—and its principal operating company—is United Stationers Supply Co. (USSC). incorporated in 1922 in Illinois.

Products

United stocks over 160,000 products in these categories:

*Janitorial and Breakroom Supplies.* United is a leading wholesaler of janitorial and breakroom supplies throughout the nation. The Company holds over 25,000 items in these lines: janitorial supplies (cleaners and cleaning accessories), breakroom items (food and beverage products), foodservice consumables (such as disposable cups, plates and utensils), safety and security items, and paper and packaging supplies. This product category provided about 27.2% of 2014's net sales primarily from Lagasse, LLC (Lagasse), a wholly owned subsidiary of USSC.

*Technology Products.* The Company is a leading national wholesale distributor of computer supplies and peripherals. It stocks over 10,000 items, including imaging supplies, data storage, digital cameras, computer accessories and computer hardware items such as printers and other peripherals. United provides these products to value-added computer resellers, office products dealers, drug stores, grocery stores and e-commerce merchants. Technology products generated about 27.0% of the Company's 2014 consolidated net sales.

*Traditional Office Products.* The Company is one of the largest national wholesale distributors of a broad range of office supplies. It carries approximately 23,000 brand-name and private label products, such as filing and record storage products, business machines, presentation products, writing instruments, paper products, shipping and mailing supplies, calendars and general office accessories. These products contributed approximately 25.0% of net sales during 2014.

*Industrial Supplies.* United is a leading wholesaler of industrial supplies in the United States and stocks over 100,000 items including hand and power tools, safety and security supplies, janitorial equipment and supplies, other various industrial MRO (maintenance, repair and operations) items and oil field and welding supplies. With the October 31st, 2014 acquisition of Liberty Bell Equipment Corp., a United States wholesaler of automotive aftermarket tools and supplies, and its affiliates (collectively, MEDCO) including G2S Equipment de Fabrication et d'Entretien ULC, a Canadian wholesaler, United now stocks automotive aftermarket tools and equipment. In 2014, the industrial category accounted for approximately 12.0% of the Company's net sales.

*Office Furniture.* United is one of the largest office furniture wholesaler distributors in the nation. It stocks approximately 4,000 products including desks, filing and storage solutions, seating and systems furniture, along with a variety of products for niche markets such as education, government, healthcare and professional services. This product category represented approximately 5.8% of net sales for the year.

1