**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CRAFTWOOD LUMBER COMPANY, *et al.*, | **Civil Action No. 16-cv-04321** |
| Plaintiffs, | Hon. John J. Tharp, Jr. |
| v. | Hon. Sidney I. Schenkier |
| ESSENDANT, INC., *et al.*, | |
| Defendants. | |

**Brief in Support of Plaintiff's Motion to Compel Further Responses to Interrogatories and Requests for Production**

**Introduction**

Plaintiff Craftwood Lumber Company ("Craftwood") served simple, straightforward interrogatories and requests for production directed to the key issues in this case. Interrogatory Nos. 7, 8, 9, 10, 11, and 12, specifically, seek basic information about the two primary defenses of defendants Essendant, Inc. and Essendant Co. ("Essendant"): (1) that the recipients of their fax advertisements gave prior express invitation or permission ("PEP"), and/or (2) that Essendant had an established business relationship ("EBR") with those recipients.

Essendant, however, has refused to respond fully and completely to these specific PEP and EBR interrogatories, and more generally, has improperly hedged virtually all of its discovery responses with statements that Essendant is "continuing its investigation" and will "supplement" (or "amend") its responses at some future, undefined time.

After almost a month-long meet and confer process – punctuated with Essendant's delays in responding – Craftwood has not received the information to which it is entitled. Instead, Essendant has either claimed that its grossly inadequate responses are adequate (which they are not), or stated that it is "looking into these issues" – the same thing it has been saying for a month. Also, Essendant persists in defending its caveats that "Defendants are continuing their investigation, [and will supplement] upon completion of their investigation," and "Defendants reserve the right to amend their response." These phrases suggest that Essendant did not fulfill its obligation to make a reasonable search and diligent inquiry sufficient to provide full responses *now*, and instead is attempting to extend the timeframe for responding to discovery by stating that it is engaged in some undefined "continuing [ ] investigation."

It is time for this obstruction to end. Craftwood requests an order from this Court directing Essendant: (1) to respond fully and without objections to Interrogatory Nos. 7, 8, 9, 10,

11, and 12; and (2) to serve amended responses omitting any references to "continuing investigations" or later "supplementation" or "amendment," and confirming that Essendant's responses are full and complete at the present time.

**Facts Relevant to the Discovery Dispute**

## I.     Craftwood's Efforts to Obtain Basic Discovery

This is a putative class action for Essendant's unlawful junk fax operations in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. 227, *et seq.* Craftwood alleges that Essendant violated the act by sending unsolicited junk fax advertisements, and by failing to include disclosures of the recipients' ability to opt-out of receiving junk faxes – disclosures that, since 2005, have been mandatory. Essendant insists, however, that Craftwood and tens of thousands of other recipients gave it prior express permission to receive its junk faxes, and/or that Essendant had an established business relationship with them. (Answer to Complaint [Dkt. No. 23], p. 9, ¶ 2; p. 10, ¶ 6.)

Craftwood has sought basic discovery regarding the claims and defenses. On or about July 15, 2016, Craftwood served a first set of interrogatories (the "Interrogatories") and a first set of requests for production of documents (the "Requests" or "RFPs") on Essendant. (Declaration of Daniel F. Lula ("Lula Decl."), ¶3, Exs. "A"-"B".) On August 31, 2016, forty five days later, Essendant served written responses. (*Id.*, ¶4, Exs. "C"-"D.")

### A.     Essendant Fails to Respond to Craftwood's Interrogatory Nos. 7 through 12, Which Seek Facts Relevant to Essendant's PEP and EBR Defenses.

Certain of Craftwood's Interrogatories were focused directly on Essendant's PEP defense. Essendant's Responses, while lengthy, are filled with inapplicable and unmeritorious objections, and ultimately provide no actual substantive responses at all. The Interrogatories and Responses are set forth in full here:

<u>Interrogatory No. 7</u>:   Separately for each Junk Fax, identify (by name, last known home and business address and telephone number and relationship to You) each Sender.

<u>Essandant's Response</u>:  Defendants object to this Interrogatory on the grounds that: (a) it is vague and ambiguous, overly broad and unduly burdensome, and seeks in formation and/or documents that are neither relevant nor proportional to the needs of the case; (b) it improperly assumes that all Defendants attempted to send faxes; (c) many, if not the majority of faxes in question, were informational and not advertising; (d) to determine whether a particular facsimile is deemed advertising or nonadvertising would require Defendants to draw a legal conclusion in order to respond; and (e) the phrase "Sender" is a legal term, and therefore would require Defendants to draw a legal conclusion in order to respond.  Subject to and without waiving the foregoing objections and their General Objections, Defendants state that Essandant Co. used a third party fax platform provided by a company known as "ABC Fax," which provided the telephone number, services, and lines used to send the faxes at at issue. Defendants are continuing their investigation regarding the information sought in this Interrogatory, and will supplement this response as necessary upon completion of their investigation.

<u>Interrogatory No. 8</u>:  Separately for each Junk Fax, identify each Person whom You contend provided Prior Express Invitation or Permission to be sent the Junk Fax.

<u>Essandant's Response</u>:  Defendants object to this Interrogatory on the grounds that: (a) it is vague and ambiguous, overly broad and unduly burdensome, and seeks in formation and/or documents that are neither relevant nor proportional to the needs of the case; (b) it improperly assumes that all Defendants attempted to send faxes; (c) many, if not the majority of faxes in question, were informational and not advertising; (d) to determine whether a particular facsimile is deemed advertising or nonadvertising would require Defendants to draw a legal conclusion in order to respond; (e) the phrase "Prior Express Permission" is a legal term, and therefore would require Defendants to draw a legal conclusion in order to respond; (f) given the number of employees who communicate and interface with Essandant Co. customers, it is not feasible and would be overly burdensome to identify "each person" called for in the Interrogatory; and (g) responding to this Interrogatory would require Defendants to do an individualized investigation and review of each customer relationship, which would be unduly burdensome given the number of customers of Essandant Co. during the Relevant Time Period.  Subject to and without waiving the foregoing objections and their General Objections, Defendants state that they believe that Essandant Co. has or had "Prior Express Invitation or Permission" from all of the "persons" to whom they attempted to send faxes. Defendants reserve the right to amend their response to this Interrogatory.  Defendants are continuing their investigation regarding the information sought in this Interrogatory, and will supplement this response as necessary upon completion of their investigation.

Interrogatory No. 9: For each Person identified in response to Interrogatory No. 8, describe (including date, nature and content of) the communications by which such Person provided Prior Express Invitation or Permission.

Essandant's Response: Defendants object to this Interrogatory on the grounds that: (a) it is vague and ambiguous, overly broad and unduly burdensome, and seeks information and/or documents that are neither relevant nor proportional to the needs of the case; (b) it improperly assumes that all Defendants attempted to send faxes; (c) many, if not the majority of faxes in question, were informational and not advertising; (d) the phrase "Prior Express Invitation or Permission" is a legal term, and therefore would require Defendants to draw a legal conclusion in order to respond; and (e) given the number of employees who communicate and interface with Essandant Co. customers, it is not feasible and would be overly burdensome to identify "each person" called for in the Interrogatory. Subject to and without waiving the foregoing objections and General Objections, Defendants state that Essandant Co.'s new customer application materials historically included in some, but not all instances, a "consent form" that allowed a customer to indicate that it agreed to receive faxes from Essandant Co. and to provide a fax number on which it desired to receive such faxes. Because there are many different types of customers, and a great degree of variation across the thousands of customer relationships, not all customers who requested or consented to receive faxes completed such a form. Defendants will produce all consent forms that they have been able to locate after a reasonable search. Defendants further state that in August 2005, one of Essandant Co.'s New Orleans, Louisiana facilities was damaged by Hurricane Katrina. As a result, a significant volume of hard copy documents and records housed in that facility, which Defendants believe included consent forms, were damaged and destroyed beyond repair. For health and safety reasons, such documents and records could not be salvaged. Defendants have also historically utilized a database known as "Trend" to house certain customer information, including customer contact information. Trend, however, was not the only repository in which customer contact information is maintained. For example, many individual sales representatives track their own customer relationships and contact information, without updating Trend. In addition, Essandant for a time maintained a customer relationship management tool that housed customer information, including customer contact information. The Trend database historically included a field to indicate whether a consent form had been collected from a particular customer. The default setting in Trend for the consent field is "No." Due to the manual nature of updating the Trend database, a "No" in the consent field did not necessarily indicate that a customer had not provided a consent form. Defendants have identified many instances in which a consent form exists, but the Trend field is populated as "No." Nor does the "No" field mean that a customer had not agreed and did not desire to receive faxes. Further affecting the accuracy of Trend are instances in which a customer's consent form field indicates a "Yes" in Trend, but the fax number associated with that consent form had subsequently changed. Defendants further state that it is Essandant's standard business practice to inform its customers at the inception of the relationship that it will communicate with them by facsimile on a variety of

topics, including special sales and promotions, as part of the customer relationship. In addition, during the time frame claimed to be relevant by Plaintiffs, Essendant Co. has communicated over the phone (generally through customer service representatives and inside sales representatives), and often times in person (generally through sales representatives), with many of its customers who inquire about and request the receipt of faxes on these topics from Essendant Co. Many customers have also called Essendant Co. to inquire about receiving facsimiles when they had a concern about potentially missing a communication. Also, many of Essendant Co.'s customers have generally transacted business with Essendant Co. through the use of facsimile transmissions, including placing orders with Essendant Co. by facsimile, and requesting that Essendant Co. transmit order acknowledgements and confirmations to its customers by facsimile as well. Pursuant to Fed. R. Civ. P. 33(d), Defendants also refer Plaintiffs to documents that will be produced that relate to the customer relationship between Essendant Co. and its customers. Defendants are continuing their investigation regarding the information sought in this Interrogatory, and will supplement this response as necessary upon completion of their investigation.

Interrogatory No. 10: Identify (by name, last known home and business address and telephone number, job title and by whom employed at the time) each Person with knowledge of any facts stated in response to Interrogatory No. 9.

Essendant's Response: Defendants object to this Interrogatory on the grounds that: (a) it is vague and ambiguous, overly broad and unduly burdensome, and seeks information and/or documents that are neither relevant nor proportional to the needs of the case; (b) it improperly assumes that all Defendants attempted to send faxes; (c) many, if not the majority of faxes in question, were informational and not advertising; (d) given the number of employees who communicate and interface with Essendant Co. customers, it is not feasible and would be overly burdensome to identify "each person" called for in the Interrogatory; and (e) responding to this Interrogatory would require Defendants to do an individualized investigation and review of each customer relationship, which would be unduly burdensome given the number of customers of Essendant during the time period that Plaintiffs claim to be at issue. Subject to and without waiving the foregoing objections and their General Objections, Defendants refer Plaintiffs to their response to Interrogatory 9. Defendants do not believe that it is possible to respond to this Interrogatory without conducting an individualized inquiry into the customer relationship with each customer who received faxes from Essendant. Defendants state that Essendant had prior express permission from its customers to communicate with them by facsimile. In some instances, such permission is documented with a written consent form in writing, while in others it included verbal communications. In all instances, however, customers who consented to be contacted via facsimile voluntarily provided a fax number at which to send and receive fax transmissions from Defendants. Pursuant to Fed. R. Civ. P. 33(d), Defendants, however, will produce responsive, nonprivileged documents that relate to this Interrogatory that can be located after a reasonable search. Defendants are continuing their investigation regarding the information sought in

this Interrogatory, and will supplement this response as necessary upon completion of their investigation.

(Lula Decl., Ex. "A," p. 3; Ex. "C," pp. 12-17.)  Two other Interrogatories focused on

Essendant's EBR defense:

Interrogatory No. 11:  Separately for each Junk Fax, identify (by name, facsimile telephone number and last known business address and telephone number) each Person with whom You contend You had an Established Business Relationship at the time the Junk Fax was sent or attempted to be sent.

Essendant's Response:  Defendants object to this Interrogatory on the grounds that: (a) it is vague and ambiguous, overly broad and unduly burdensome, and seeks information and/or documents that are neither relevant nor proportional to the needs of the case; (b) it improperly assumes that all Defendants attempted to send faxes; (c) many, if not the majority of faxes in question, were informational and not advertising; (d) the phrase "Established Business Relationship" is a legal term, and therefore would require Defendants to draw a legal conclusion in order to respond; and (e) given the number of employees who communicate and interface with Essendant customers, it is not feasible and would be overly burdensome to identify "each person" called for in the Interrogatory.  Subject to and without waiving the foregoing objections and General Objections, Defendants refer Plaintiffs to their response to Interrogatory 9 and 10. Answering further, Defendants state that they believe that Essendant has or had an Established Business Relationship with all of the "persons" to whom they attempted to send faxes, because Essendant used facsimiles to communicate with its customers and many of its customers used facsimiles to communicate with Essendant in many circumstances. The faxes were not intended to attract new business from prospective customers. Pursuant to Fed. R. Civ. P. 33(d), Defendants will produce responsive, nonprivileged documents that relate to this Interrogatory that can be located after a reasonable search.  Defendants are continuing their investigation regarding the information sought in this Interrogatory, and will supplement this response as necessary upon completion of their investigation.

Interrogatory No. 12:  For each Person identified in response to Interrogatory No. 11, state the circumstances of how and when the Established Business Relationship was commenced.

Essendant's Response:  Defendants object to this Interrogatory on the grounds that: (a) it is vague and ambiguous, overly broad and unduly burdensome, and seeks information and/or documents that are neither relevant nor proportional to the needs of the case; (b) it improperly assumes that all Defendants attempted to send faxes; (c) many, if not the majority of faxes in question, were informational and not advertising; (d) the phrase "Established Business Relationship" is a legal term, and therefore would require Defendants to draw a legal conclusion in order to respond; and (e) given the number of employees who communicate and

interface with Essendant customers, it is not feasible and would be overly burdensome to identify "each person" called for in the Interrogatory. Subject to and without waiving the foregoing objections and General Objections, Defendants refer Plaintiffs to their response to Interrogatory 9, 10 and 11. Defendants do not believe that it is possible to respond to this Interrogatory without conducting an individualized inquiry into the customer relationship with each customer who received a fax from Essendant. Pursuant to Fed. R. Civ. P. 33(d), Defendants will produce responsive, non-privileged documents constituting credit and application materials that can be located after a reasonable search. Defendants are continuing their investigation regarding the information sought in this Interrogatory, and will supplement this response as necessary upon completion of their investigation.

(Lula Decl., Ex. "A," p. 4; Ex. "C," pp. 17-19.)

**B.      Essendant's Responses, Overall, Contain Evasive Language Indicating That It Has Not Complied With Its Responsibilities in Responding to Discovery.**

An additional problem with Essendant's Responses (not just to the identified Interrogatories, but to all discovery requests) is that they contain "hedging" language. For example, in response to Interrogatory No. 1 – a simple question asking Essendant to name those individuals involved in the sending of the junk faxes – Essendant responded, "Defendants are continuing their investigation . . . and will supplement this response as necessary upon completion of their investigation."    (Lula Decl., Ex. "C," p. 8.)

Essendant included this, or similar, phrases in response to *every single* Interrogatory. (*See generally* Lula Decl., Ex "C," Interrogatory Nos. 2 ("continuing their investigation"), No. 3 ("Defendants reserve the right to amend their response to this Interrogatory"), No. 4 (same), No. 5 ("Defendants are continuing their investigation . . ."), No. 6 ("reserve the right to amend"), No. 7 ("continuing their investigation"), No. 8 (same), No. 9 (same), No. 10 (same), No. 11 (same), No. 12 (same), No. 13 ("reserve the right to amend"), No. 14 (same), No. 15 ("continuing their investigation . . . and will supplement this response").)

To a lesser extent – but still a troublingly frequent one – Essendant included such language in its Responses to Craftwood's RFPs[1] as well.  (*See generally* Lula Decl., Ex. "D," p. 8,  RFP No. 2.1 ("Defendants reserve the right to amend and/or supplement their response to this Request"); p. 10, RFP No. 3.2 (same); p. 11, RFP No. 3.3 ("subject to its continuing investigation, Defendants state that . . ."); p. 13, RFP No. 3.5 ("Defendants reserve the right to amend and/or supplement their response . . .").)

## II.    Craftwood's Efforts at Informal Resolution.

Craftwood has engaged in an extensive meet and confer process with Essendant's counsel.  On October 8, 2016, Craftwood's attorneys sent a detailed meet and confer e-mail to defense counsel.  (Lula Decl., ¶5, Ex. "E.")  The parties thereafter held an hour-long telephone conference attended by two attorneys for each side, as well as Essendant's IT specialist, Nainesh Ramjee.  (*Id.*, ¶7.)  At that conference, defense counsel were not prepared to discuss the Interrogatories and Essendant's Responses in any meaningful way.  (*Id.*, ¶¶8-10.)

Afterwards, Craftwood's counsel sent repeated e-mails to follow up.  In each case, defense counsel's response was to delay and obfuscate.  For example, on October 14, 2016, defense counsel's response as to the Interrogatories was "we are discussing the purported deficiencies with our client and will provide a response . . ." (*Id.*, Ex. "G," p. 1.)  After five days passed, Craftwood's counsel again requested a response.  (*Id.*, Ex. "H.")  It took defense counsel another two days to respond, with nothing more than, again, "we are considering your purported deficiencies and will respond to them separately."  (*Id.*, Ex. "I," p. 1.)

---

[1] For some unknown reason, Essendant's Responses to Craftwood's RFPs confusingly re-numbered the Requests.

Essandant did not substantively respond to Craftwood's concerns about its Responses until October 25, 2016. (Lula Decl., Ex. "J.") Essandant did not change, alter, or amend a <u>single one</u> of its Responses. Instead, as to each and every Response, Essandant defended its objections and response as originally framed. (*Id.*) Having exhausted the meet and confer process to no avail, Craftwood was forced to bring this motion.

Argument

## I. Essandant Must Respond Fully and Completely to Those Interrogatories Directed to Its PEP and EBR Defenses.

### A. Interrogatory Nos. 7-12 Are Proper and Seek Relevant Information.

The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant[2] to any party's claim or defense and proportional to the needs of the case." (Fed. R. Civ. P. 26(b)(1).) Interrogatory Nos. 7, 8, 9, 10, 11 and 12 seek information relevant to Essandant's twin defenses of PEP and EBR, and are thus entirely proper.

For example, Interrogatory No. 7 asks for Essandant to identify the *Sender*[3] of each fax at issue. This is clearly relevant information. Interrogatory No. 8 asks Essandant to identify each person it contends provided PEP; No. 9 asks it to describe the communications by which each identified person provided PEP; and No. 10 asks it to identify each person with knowledge of any facts stated in response to No. 9. (Lula Decl., Ex. "A," p. 3.) This is unquestionably relevant, appropriate information for a TCPA plaintiff to request. *See Knutson v. Schwan's Home Service, Inc.*, No. 12cv964, 2013 WL 1222116 at *3 (finding PEP discovery proper) (S.D.

---

[2] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." (Fed. R. Evid. 401.)

[3] "Sender" is defined as "any person or entity as defined in 47 C.F.R. § 64.1200(f)(8)." (Lula Decl., Ex. "A," p. 2.)

Cal. Mar. 25, 2013), *reversed in part on other grounds in Knutson v. Schwan's Home Service, Inc.*, No. 3:12–cv–0964, 2013 WL 3746118 (S.D. Cal. Jul. 15, 2013); *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 13cv1556, 2014 WL 3894348 at *4 (S.D. Cal. Jun. 12, 2014) (same); *Henderson v. United Student Aid Funds, Inc.*, No. 13cv1845, 2015 WL 4742346 at *7 (S.D. Cal. Jul. 28, 2015) (same).

Interrogatory Nos. 11 and 12 are directed to Essendant's EBR defense, and likewise plainly seek relevant information. No. 11 asks Essendant to identify each person with whom it contends it had an EBR at the time the fax was sent, and No. 12 asks Essendant – for each person identified – to state the circumstances of how the EBR was commenced. (Lula Decl., Ex. "A," p. 4.) It is hard to imagine more straightforward questions about a party's affirmative defense.

> ### B.    Essendant's Objections and Nonresponsive Answers Are Improper.
>
> #### 1.    Essendant's Objections Are Meritless.

The first problem with Essendant's Responses are its litany of boilerplate and invalid objections to every Interrogatory. For example, Interrogatory No. 7 asks Essendant to identify the "Sender" of each fax; Essendant claims this is "vague," "ambiguous," "overly broad," "unduly burdensome," that "many . . . of faxes in question were informational and not advertising,"[4] and that the request "would require Defendants to draw a legal conclusion" because "'Sender' is a legal term." (Lula Decl., Ex. "C," p. 12.) It is completely appropriate for Craftwood to ask an Interrogatory that calls for a legal conclusion (i.e., for Essendant to admit whether it is or is not the "Sender" of each fax, and to identify whether Essendant Inc. or Essendant Co. sent each one). Interrogatories are the proper place to ferret out a party's legal contentions. (*See* Fed. R. Civ. P. 33(a)(2); *Trueman v. New York State Canal Corp.*, No. 1:09-

---

[4] This is simply not a proper objection at all, but rather an argument on the merits.

CV-049, 2010 WL 681341 at *7 (N.D.N.Y. Feb. 24, 2010) (interrogatory asking a party to identify what statutes he contended were violated was "a proper contention interrogatory.").)

Essendant has raised similar, if not identical, objections to each remaining Interrogatory at issue. In response to No. 8, seeking an identification of each person that Essendant claims gave it PEP, Essendant objects: "vague," "ambiguous," "overly broad and unduly burdensome," "faxes . . . informational and not advertising," "to determine whether a particular facsimile is deemed advertising or non-advertising would require Defendants to draw a legal conclusion," "the phrase 'Prior Express Permission' is a legal term," etc. These objections, repeated as to Interrogatory Nos. 9, 10, 11 and 12, are simply without merit. They should be overruled.

## 2. Essendant's Responses, Made "Subject to" the Objections, Are Evasive and Nonresponsive.

Essendant has purported to respond to Interrogatory Nos. 7-12 "subject to and without waiving" its objections. However, those responses are seriously deficient. They are either nonresponsive, avoid the question posed, or both.

In response to Interrogatory No. 7, which simply asks for the "Sender" of each fax – a question which could be responded to by defendants simply providing a breakdown of which faxes in their production (identified by Bates-range) were sent by Essendant, Inc. versus Essendant Co. – Essendant has responded that it "used a third party fax platform provided by . . . ABC Fax." (Lula Decl., Ex. "C," p. 12.) The interrogatory does not ask about "fax platforms." Essendant's answer is completely nonresponsive.

Similarly, Interrogatory No. 8 asks Essendant to identify all persons whom it contends provided PEP to receive fax advertisements. Essendant's response was: "all of the 'persons' to whom [Essendant] attempted to send faxes." (*Id.*, p. 13.) This response is evasive and disingenuous. Essendant's response to Interrogatory No. 9, which asks for a description of each

communication constituting PEP, is equally invalid. Essendant provides two and a half pages of worthless narrative about its databases and certain forms it purports to obtain from its customers – but never describes specific communications made by specific customers constituting PEP, which is what was requested. Essendant compounds its error by providing a defective invocation of Rule 33(d): "Defendants also refer Plaintiffs to documents that will be produced that relate to the customer relationship between Essendant Co. and its customers. Defendants are continuing their investigation . . ." Rule 33(d) states:

> (d) Option to Produce Business Records. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

(Fed. R. Civ. P. 33(d).) Here, Essendant has not specified any document (for example, by Bates-range), and so its citation of Rule 33(d) does not save its defective response. Essendant's response to Interrogatory No. 10, asking for all persons who have knowledge of the facts stated in response to Interrogatory No. 9, suffers from the same flaw: "Pursuant to Fed. R. Civ. P. 33(d), Defendants, however, will produce responsive, nonprivileged documents that relate to this Interrogatory that can be located after a reasonable search." (Lula Decl., Ex. "C," p. 17.) Not only has Essendant failed to specifically identify the records it contends provide the identities of the persons with knowledge of how certain fax recipients provided PEP, but Essendant has stated that it will provide documents that "relate to" this Interrogatory. It is unclear what that means. Will the documents actually provide the answer? Or do they merely "relate to" the answer?

Essandant's responses to Interrogatory Nos. 11 and 12, both directed to its EBR defense, consist of the same flawed objections, non-responses, and defective Rule 33(d) invocations. In response to No. 11, asking it to identify all persons with whom Essandant contends it had an EBR, Essandant responded, "all of the 'persons' to whom [it] attempted to send faxes," and then stated, "[p]ursuant to Fed. R. Civ. P. 33(d), Defendants will produce responsive, nonprivileged documents that relate to this Interrogatory." (Lula Decl., Ex. "C," p. 18.) The response to No. 12 is substantially identical. (*Id.*, p. 19.)

Craftwood is entitled to real responses providing the basis for Essandant's PEP and EBR defenses, and courts have compelled such discovery over the kind of boilerplate "burden" objections made by Essandant here. *See, e.g., Gaines*, *supra*, 2014 WL 3894348 at *4:

> The Court appreciates that reviewing and producing the information requested by Plaintiffs will take time and effort. The question, however, is whether the burden associated with producing the information outweighs its likely benefit. **The Court notes that if Defendant asserts the defense of prior express consent, it will have the burden to establish that defense. Thus, the Court finds it is not be overly burdensome for Defendant to produce the documentation it intends to rely on to support its defense.** Further, the Court finds that it would not be unduly burdensome for Defendant to produce evidence of prior express consent as it applies to Plaintiff.

*Id.*, at *4 (emphasis added) (also ordering defendant to produce "all documents and communications Defendant contends represent "PRIOR EXPRESS CONSENT provided by the CALL RECIPIENTS to receive PHONE CALLS"). Likewise, if Essandant raises the defenses of PEP and EBR, it must fully and completely respond to Interrogatory Nos. 7 through 12.

## II. Essandant Must Remove All Irrelevant, Qualifying Language From Its Responses.

The Federal Rules of Civil Procedure require interrogatories and requests for production to be answered within 30 days. (Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A).) Here, the Court gave Essandant a brief extension at a status conference, so that Essandant actually had 45 days to

respond (from July 15 to August 31, 2016). Nothing in the Federal Rules allows a party to provide anything in response to an interrogatory or document request other than: (1) a full response; (2) an objection; or (3) a statement of inability to comply. Yet, here, in response to virtually every discovery demand, Essendant has made statements such as "the investigation is continuing," Essendant "will supplement the response," or Essendant "reserves the right to amend the response." These statements are wholly improper. *See United States v. Cook*, No. 2:11-cv-3422, 2013 WL 79525 at *1 (E.D. Cal. Jan. 4. 2013) ("Moreover, responses indicating that no substantive response can be given at this time because "discovery is ongoing," or "investigation continues," or words to that effect, are not valid.").

It is true that Rule 26(e) requires a party "who has responded to an interrogatory, request for production, or request for admission . . . [to] supplement or correct its disclosure or response . . . <u>if the party learns that in some material respect the disclosure or response is incomplete or incorrect</u>." (Fed. R. Civ. P. 26(e), emphasis added.) This presupposes that the request has <u>already</u> been responded to and is <u>later</u> found to be inaccurate. It is <u>not</u> a license for a party to indefinitely extend the time for providing a full and complete response by citing undefined and as-yet-incomplete "ongoing investigations," as Essendant has done. (*See Goethe v. California D.M.V.*, No. CIV S-07-1945, 2009 WL 3568624 at *1 (E.D. Cal. Oct. 27, 2009) ("The duty to supplement is not a license to unduly delay production or get around discovery obligations when convenient.").) Essendant must remove all of these hedging phrases from its discovery responses, so that Craftwood can be assured that the responses represent full and complete answers. In addition, Essendant should be ordered in its amended responses to affirmatively state, with respect to every response, that it has conducted a reasonable search and diligent inquiry and the response is full and complete.

**Conclusion**

Essendant's refusal to make basic discovery should result in an order compelling full and complete compliance. In fact, Essendant should be sanctioned for its misconduct, as it has caused Craftwood to incur legal fees and costs by making this motion necessary. (Fed. R. Civ. P. 37(a)(5) ["If the motion is granted . . . the Court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."].) Craftwood and its counsel, however, have – in the interest of collegiality – not sought sanctions at this time.[5]

An order should issue compelling Essendant to, in the shortest possible time, substantively respond to Interrogatory Nos. 7, 8, 9, 10, 11, and 12, and serve amended responses to all outstanding discovery that does not contain hedging language and instead certifies that Essendant has complied with its duties under the Federal Rules of Civil Procedure to provide full and complete responses at this time.

DATED: November 7, 2016

PAYNE & FEARS LLP

/s/Daniel F. Lula
Daniel F. Lula (CA Bar No. 227295)
Payne & Fears LLP
4 Park Plaza, Suite 1100
Irvine, CA 92614
Tel: (949) 851-1100
Fax: (949) 851-1212
dfl@paynefears.com
*Attorneys for Plaintiffs Craftwood Lumber Company and Craftwood II, Inc.*

---

[5] Craftwood reserves the right to seek sanctions (including monetary, evidentiary, or terminating) if a further motion with respect to these discovery demands, or any others, is required in the future.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2016, a true and correct copy of the foregoing document was electronically filed with the Court using the CM/ECF system, All counsel of record who are deemed to have consented to electronic service will be served with a copy of this document via the Court's CM/ECF system.

/s/Daniel F. Lula
Daniel F. Lula

4822-0772-6395.1