## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CRAFTWOOD LUMBER COMPANY, *et al.*, | |
| Plaintiffs, | **Civil Action No. 16-cv-04321** |
| v. | Honorable John J. Tharp, Jr. |
| ESSENDANT, INC., *et al.*, | Magistrate Judge Sidney I. Schenkier |
| Defendants. | |

## BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

Defendants Essendant Inc. and Essendant Co. ("collectively, "Defendants") respectfully submit this memorandum of law in opposition to the Motion to Compel Further Responses to Interrogatories and Requests for Production ("Plaintiffs' Motion") filed by plaintiffs, Craftwood Lumber Company and Craftwood II, Inc. (collectively "Plaintiffs"). Defendants also rely on the Declarations of Nainesh Ramjee ("Ramjee Decl.") and Thomas Reddy ("Reddy Decl.")

## PRELIMINARY STATEMENT

Plaintiffs' Motion is curious and confusing as it seeks, in large part, information already provided by Defendants. As outlined herein, Defendants have already provided an abundance of documents related to prior express permission ("PEP") and established business relationship ("EBR") in the form of the massive Credit Files, over 4,700 Consent Forms, the Trend Database, and Customer Declarations, along with written responses to Plaintiffs' Interrogatories. Plaintiffs do not argue that Defendants failed to provide written responses to their discovery demands, nor do they argue that Defendants failed to make any productions in this case. Rather, Plaintiffs filed this Motion to inappropriately conclude the discovery process

and seek much more information than required to adjudicate its TCPA claims without regard to the complexities of their demands, the logistics of electronic data mining and individualized inquiries, and the October Order set forth by this Court setting the deadline of class discovery in May 2017. The outcome and responses Plaintiffs seek from Defendants are disproportional and unrealistic in light of the rules governing discovery, the nature of this suit, the large number of customers with which Defendants conduct business, and the glaring lack of any legal basis for Plaintiffs to seek this Court's help in overruling otherwise valid, specific, and tailored objections and responses. Moreover, the information that Plaintiffs seek shows exactly why this case is inappropriate for class treatment.

For these reasons, and more fully set forth below, the motion should be denied in its entirety.

## RELEVANT FACTUAL BACKGROUND

This is a putative class action in which Plaintiffs seek to recover statutory damages for alleged violations of the TCPA related to certain faxes Defendants' sent to their customers. This is not a case in which a company purchased a list of leads from a third-party vendor in hopes of soliciting strangers to become new customers. In this case, Essendant Co. intended to send faxes to its existing customers, with whom it had an ongoing business relationship and who had provided prior express permission to receive faxes from Essendant Co. These faxes were not "junk" faxes, but rather communicated important information to Essendant Co.'s customer base, who are themselves resellers of Essendant's products.

Since the commencement of this litigation, Defendants have been proactive in investigating the key issues in this case, including those related to defenses such as PEP and EBR. On July 15, 2016, Plaintiffs propounded and served their first set of interrogatories

("Interrogatories") and document requests ("Requests" or "RFPDs") on Defendants. Contrary to Plaintiffs' claim, nothing about Plaintiffs' Interrogatories or Requests is "simple" or "straightforward." Indeed, Plaintiffs' requests are substantially overbroad and overreaching. Nonetheless, Defendants endeavored to provide Plaintiffs with sufficient information and documents to respond to that discovery.

In cases like this, the primary discovery burden falls squarely on the shoulders of the defendant. Here, Defendants have scoured documentation from many years past, conducted costly data mining, and engaged in multi-departmental coordination in order to accurately and efficiently evaluate sources of relevant information. As the facts below will outline, Defendants have diligently responded to Plaintiffs' written discovery requests, including those pertaining to PEP and EBR.

On August 31, 2016, as a result of an extensive and collaborative effort on the part of Defendants' employees, Defendants provided detailed and specific written responses and objections to Plaintiffs' 55 separate discovery demands (15 Interrogatories and 40 Requests). (Lula Decl., Exhibits C and D).[1] (Ramjee Decl. ¶3, attached hereto as Exhibit 1). Defendants concurrently produced their first set of documents and data to Plaintiffs, including detailed fax records and the fax artwork (the "Artwork") (*i.e.* the documents actually transmitted for the fax campaigns targeted to Defendants' existing customer base). (*Id.* at ¶4, Exhibit A, 8/31/16 Production Letter).[2] Thereafter, Defendants made several more productions as documents and information continued to become available as a result of Defendants' investigation.

---

[1]     Plaintiffs allege that Defendants "renumbered" the Document Requests in their Responses. However, Plaintiffs are well aware that the renumbering was due to a computer glitch and that glitch was corrected and properly numbered Responses were served approximately an hour after the original Responses were served.

[2]     When productions were made, Defendants' counsel, including Nainesh Ramjee, a senior Litigation Associate at Kelley Drye & Warren LLP, were available to discuss the nature of, and explain in greater detail each

On September 22, 2016, Defendants produced a very large set of documents composed of Defendants' customer credit files, which included credit applications, bank authorization forms, tax forms, new customer applications, and consent forms (the "Credit Files"). (Ramjee Decl. ¶5, Exhibit B, 9/22/16 Production Letter). Altogether, over 134,000 Credit File documents, consisting of over 250,000 pages were scanned from a hard copy version and coded. This was over a month-long effort costing Defendants about $98,500. (Reddy Decl., ¶¶3-5, attached hereto as Exhibit 2). This process also required over 20 on-site visits by eDiscovery specialists to aide in the effort—an effort voluntarily undertaken prior to any discovery being propounded.[3] (*Id*. at ¶4).

Along with this production, Defendants also located and produced a set of over 4,700 individual consent forms from Defendants' customers desiring to communicate with Defendants via facsimile (the "Consent Forms").[4] (Ramjee Decl. ¶5, Exhibit B). Importantly, Defendants noted in their response to Interrogatory No. 9 that "there are many different types of customers, and a great degree of variation across the thousands of customer relationships," which meant that "not all customers who requested or consented to receive faxes completed

---

production made to Plaintiffs, and even assist Plaintiffs' counsel with any technical issues they encountered with accessing and downloading the data and documents.

[3] Plaintiffs' counsel issued notices of appearance in an identical and earlier filed case pending in this Court before Judge Durkin on November 4, *Alpha Tech Pet, Inc. v. Essendant, et al.*, Case No. 15-1443 (N.D. Ill.) It is Defendants' understanding that the Alpha Tech and Craftwood plaintiffs will be seeking to consolidate this case before Judge Durkin.

[4] Defendants further explained in their response to Interrogatory No. 9 that due to the devastating damage caused by Hurricane Katrina in 2005, "a significant volume of hard copy documents and records housed in [Essendant Co.'s New Orleans facility] … were damaged and destroyed beyond repair" and that "[f]or health and safety reasons, such documents and records could not be salvaged." (Lula Decl., Ex. C, pp. 14-15). As such, Defendants believe that they have lost a significant portion of their consent records, and do not have any other documentation to rely upon for many of its customers, despite undertaking efforts to restore the lost records.

such a form." (Lula Decl., Exhibit C, p. 14). Finally, Defendants produced an internal database known as "Trend" that contained customer information, including contact information and a consent to be faxed data field (the "Trend Database"), which as explained in Defendants' responses to the Interrogatories, contains certain information pertinent to Plaintiffs' discovery requests involving PEP and EBR. (*See id.,* pp. 14 – 16, Response No. 9).

In addition to the explanatory responses to the Interrogatories and Requests, Plaintiffs' counsel sent an email to Defendants' counsel, Givonna Long, that same day seeking further clarification as to whether certain categories of documents were produced to them. (Ramjee Decl. ¶6, Exhibit C, Email chain between Long and Lula re: bates range specifications). In pertinent part, Plaintiffs' counsel specifically asked for bates ranges regarding "[d]ocuments showing PEP given by any [sic] the recipients of each campaign" and "[d]ocuments showing EBR with any recipients of each campaign." (*Id.*). In response, Ms. Long provided specific bates ranges, which were "***ESSE-0000001902 – 0000258302, ESSE-0000258303, and ESSE-000258304 – 0000258305***." (*Id.*) (emphasis added). As Ms. Long noted in her email, these bates ranges correspond to the Credit Files, Consent Forms, and Trend Database, respectively.

Of significant note, on October 5, 2016, shortly after the September 22nd production, the parties attended a status hearing with this Court. At the hearing, the Court set a fact discovery deadline for class discovery "to be completed by no later than 5/10/17" – a deadline that expires more than six months from the date of Plaintiffs' Motion (the "October Order"). (Dkt. No. 30).

In furtherance of this Court's October Order and Defendants' desire to expeditiously and accurately complete fact discovery, Defendants continued to provide relevant documents and data, including information regarding PEP and EBR. On October 14, 2016, Defendants

supplemented their initial production of fax detail records to provide all fax detail records spanning May 2011 through May 2015 (the "Fax Detail Records"). (Ramjee Decl. ¶7, Exhibit D, 10/14/16 Production Letter). The Fax Detail Records are output files from a third party vendor, ABC Fax. Altogether, this data set consisted of 726 data files from two accounts that Essendant Co. employees used spanning the relevant time period, with each containing pertinent information such as fax number, name of the fax recipient, duration of faxing, the billable amount per fax transmission, the send date, and a "description" field noting the disposition of the fax transmission to the recipient (*i.e.* whether the transmission was successful or failed).

Less than a week later, on October 20, 2016, Defendants made yet another production pertaining to the Fax Detail Records.[5] (Ramjee Decl. ¶8, Exhibit E, 10/20/16 Production Letter). Specifically, Defendants provided Plaintiffs the fax lists used by ABC Fax to send faxes in a given campaign (the "Fax Lists"). (*Id.*). Moreover, to aide in Plaintiffs' review of PEP and EBR related documents, Defendants produced batch detail records for each and every one of the 726 Fax Detail Records (the "Batch Detail Records"). (*Id.*). These Batch Detail Records are website screenshots from the two Essendant Co. ABC Fax accounts used during the relevant time period. (*Id.*). The Batch Detail Records, which are nearly 1000 pages, contain pertinent information such as fax campaign date, name of document transmitted, name of list used for fax transmissions, a final call count, and the disposition of the attempted fax transmissions—all information pertinent to questions of PEP and EBR.

---

[5]     Concurrently, Plaintiffs also received a response to the subpoena they served on ABC Fax seeking similar documents. On or about October 13, 2016, ABC Fax produced a number of relevant documents similar to that of the Fax Lists, Fax Detail Records, and Artwork.

Most recently, on October 24, 2016, Defendants produced a set of 25 customer declarations (the "Customer Declarations") that relate to the issues of PEP and EBR. (Ramjee Decl. ¶9, Exhibit F, 10/24/16 Production Letter).[6] In relevant part, all of these Customer Declarations state that the customer provided PEP to Defendants to receive faxes, despite the fact that Defendants have not located any documentation reflecting such PEP for these particular customers. The Customer Declarations also state that the customers both expected and welcomed fax communications from Defendants, and that no damage or injury occurred as a result of these fax communications.

Finally, Defendants are in the process of providing electronically stored information ("ESI") to Plaintiffs. This process was stalled, because Plaintiffs, who were originally supposed to provide Defendants with search terms for the location and production of ESI, refused to provide search terms or cooperate with Defendants in that process.

At no point during the discovery process have Defendants or their counsel refused to cooperate, withhold information or documents, or been unwilling to discuss and clarify the status and nature of Defendants' ongoing effort to comply with Plaintiffs' discovery demands to ensure a complete and accurate record is made available. Unfortunately, Plaintiffs' Motion has only served to show that Plaintiffs do not share in Defendants' efforts to work cooperatively.

## ARGUMENT

### I. Defendants Have Sufficiently Responded To Plaintiffs' Written Discovery

#### a. Plaintiffs' Demand to Overrule Defendants' Objections is Improper and Disproportionate to the Needs of This Case

---

[6]    It should be noted that documents produced to date have been produced in sequestered, organized, and logical sets for convenience.

As Plaintiffs aptly point out, Rule 26 was amended to curb overly broad and disproportionate discovery demands. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matters that is relevant … and ***proportional*** to the needs of the case.") (emphasis added); *see also Elliot v. Superior Pool Products, LLC*, Case No. 15-cv-1126, 2016 WL 29243, at *2 (C.D. Ill. Jan. 4, 2016) (recognizing that amended Rule 26(b)(1) "restores the proportionality factors to their original place in defining the scope of discovery"); *Noble Roman's, Inc. v. Hattenhauer Distributing Co.*, 314 F.R.D. 304, 308 (S.D. Ind. 2016) (Rule 26(b)'s 2015 amendment was "designed to protect against over-discovery and to emphasize judicial management of the discovery process…"); *Perez v. Mueller et al.*, No. 13-C-1302, 2016 WL 3360422, at *1 (E.D. Wis. May 27, 2016) (same). Moreover, to mitigate the cost of litigation, Rule 33(d) provides that where the answer to an interrogatory may be determined by examining business records, "the responding party may … specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d).

Here, Defendants have already produced voluminous records pertaining to PEP and EBR, have provided specified and tailored responses to Interrogatory Nos. 7 – 12 and the RFPDs, have engaged in multiple meet and confer exchanges with Plaintiffs' counsel, and have specifically directed Plaintiffs to documents that contain PEP and EBR evidence. (Ramjee Decl., ¶¶3-10). Yet, for Plaintiffs, this is not enough. Plaintiffs seek to take Interrogatory Nos. 7 – 12 to lengths much further than permitted by Rule 26(b)(1)'s proportionality limitation and impose an unnecessary burden on Defendants.

For instance, Interrogatory No. 7 seeks the identity of the sender of the faxes at issue in this case. In the response, Defendants identified that Essendant Co. used a third party, ABC Fax to send the faxes at issue. Essendant Inc. did not send faxes, thus, there is nothing further required from Defendants to respond to this Interrogatory, and Plaintiffs' motion to compel a further response should be denied.

Interrogatory Nos. 8 and 9 demand that Defendants identify all fax recipients that had a PEP with Defendants, and to "describe the communications by which each identified person provided PEP." (Lula Decl., Exhibit C, pp. 13-16). As Defendants have explained both in their written responses and verbally to Plaintiffs' counsel, "there are many different types of customers, and a great degree of variation across the thousands of customer relationships" which would make it unduly burdensome and disproportionate to the needs of the case. (*Id.*). Defendants did, however, produce documents showing PEP to the extent available. Interrogatory No. 10 similarly demands that Defendants identify "each Person with knowledge of any facts stated in response to Interrogatory No. 9." (Lula Decl., Exhibit C, p. 16). As explained in their response, it would not be "possible to respond to this Interrogatory without conducting an individualized inquiry into the customer relationship with each [of the thousands of] customer[s] who received faxes from Essendant." (*Id.*, at p. 17). Again, Defendants produced documents identifying this information. Plaintiffs, however, argue that Defendants should individually identify each and every person for which Defendants had PEP. This is antithetical to the entire purpose of a class action. The fact that Plaintiffs claim that they need this information underscores the reasons why this case in not appropriate for class treatment.

A court in the Central District of California recently made this specific finding on the issue of PEP in a case that is both factually on point and legally instructive here. In that case, *Simon v. Healthways*, the plaintiff asserted TCPA claims nearly identical to Plaintiffs' claims here, and the defendant in that case – like Defendants here – raised the defense of PEP. *Simon v. Healthways, Inc. et al.*, Case No. 2:14-cv-08022-BRO (JCx), 2015 WL 10015953, (C.D. Cal. Dec. 17, 2015). The plaintiff in *Simon* sought to certify a class of TCPA fax recipients based on seven fax transmissions, which referred to and discussed the defendants' secure email program for healthcare providers. *Id.* at *1. The defendant provided evidence that it obtained PEP from healthcare providers to send faxes in a variety of methods, including orally, and argued that determining which class members provided PEP and which arguably did not would require a highly individualized effort not conducive to a class proceeding. In *Simon,* Judge O'Connell denied the plaintiffs' motion for class certification, holding that because of the issue of PEP "[t]he Court cannot and will not engage in hundreds of mini-trials to determine whether a putative class member provided [d]efendants his or her prior express permission." *Id.* at *8.

Likewise, Interrogatory Nos. 11 and 12 ask Defendants to identify all fax recipients that had an EBR with Defendants, and the "circumstances of how and when the Established Business Relationship was commenced." (Lula Decl., Exhibit C, pp. 17-18). For the reasons stated in its responses to Interrogatory Nos. 9 – 10, it would also be an extremely undue and unnecessary burden upon Defendants to investigate and make a one-by-one inquiry into each and every one of their thousands of customers regarding the specific circumstances under which EBR was established, and with whom at Essendant a particular customer EBR was commenced. Such information is of no consequence to the underlying claims, defenses, and issues in this case nor part of any element of a TCPA claim, because how the EBR was

established is not the relevant inquiry. Plaintiffs are already in possession of the Credit Files, Consent Forms, Trend Database, and Customer Declarations – at great cost of time and money to Defendants, which Plaintiffs can use to identify those customers with whom Defendants have an EBR. Plaintiffs' position as to these requests, again, underscores that this case requires individualized proofs and inquiries that render it inappropriate for class treatment.

### b. The Case Law Does Not Support Plaintiffs' Unreasonable Demands

As a threshold matter, there is no citation to any Illinois or Seventh Circuit jurisprudence to be found anywhere in Plaintiffs' Motion. Moreover, the case law Plaintiffs rely on is completely off point as to the facts and manufactured issues at hand here. They do not remotely support Plaintiffs' unreasonable demands to require a one-by-one identification of each and every recipient with PEP, EBR, and the circumstances under which PEP and EBR were obtained for these customers Further, an extensive documentary record of consent and EBR information has been made available by Defendants.

In fact, the holdings in *Knutson v. Schwan's Home Service, Inc.*, No. 12-cv-964, 2013 WL 1222116 (S.D. Cal. Mar. 25, 2013), *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 13-cv-1556, 2014 WL 3894348 (S.D. Cal. Jun. 12, 2014), and *Henderson v. United States Aid Funds, Inc.*, No. 13-cv-1845, 2015 WL 4742346 (S.D. Cal. Jul. 28, 2015) all demonstrate that Defendants have gone above and beyond what is required by the relevant rules to accommodate Plaintiffs' discovery demands, because Defendants have already produced much more information and documents than any of the defendants in the below cases were compelled to produce.

In *Knutson*, defendant refused to produce any records with respect to PEP, and further refused to meet plaintiff half-way with a compromise of sampling its records for PEP.

*Knutson*, 2013 WL 1222116 at *4. The *Knutson* court, however, recognized and "appreciate[d] that reviewing and producing the volume of information requested by Plaintiffs at this stage in litigation is burdensome." *Id.* Ultimately, defendant was ordered to provide its electronic PEP records, and perform only a sampling on its partial non-electronic records. *Id.* at *4.

In *Gaines*, the defendant argued that it did not have any outbound dial lists to provide plaintiff, and did not bother to hire an expert to determine whether their dialer could provide one. *Gaines*, 2014 WL 3894348, at *2. The *Gaines* defendants also further refused to provide any documentation regarding PEP and EBR, arguing that "it would have to review approximately 307,000 individual accounts for responsive documents … [and] that it would take 12-72 people employed full time for a year to complete a review of the documentation evidencing each customer's prior express consent." *Id.* at *4. Understanding this point, the *Gaines* plaintiff compromised and only asked "that at a minimum, Defendant should be compelled to produce any documentation it intends to rely on to establish its defense of prior express consent." *Id.* at *4. The Court sided with plaintiff's compromise and only compelled consent information to be produced as to the named plaintiff. *Id.*

The *Henderson* case fairs no better as the issue there focused on the relevancy of document requests seeking information on prior express consent where defendant refused to produce any documents on point. *Henderson*, 2015 WL 4742346, at *6-7. This is another case where the defendant withheld or refused to produce documents regarding PEP and EBR. In contrast, Defendants have both responded with specificity as to all Interrogatories and RFPDs that Plaintiffs have propounded on the subject, produced ample documentation

supporting the PEP and EBR, consulted with and directly pointed Plaintiffs' counsel to bates ranges for PEP and EBR documents in both descriptive cover letters and by separate email.

In circumstances such as these, it is appropriate to deny a motion to compel.  *See*, *e.g. Lambert v. Houi*, No. 99 C 50076, 2002 WL 169367, *1 (N.D. Ill. Jan. 31, 2002) (denying plaintiff's motion to compel as to further responses to certain interrogatories, finding that after review of responses that defendants "have sufficiently responded" and that responses were "based upon their recollection and reasonable investigation."); *Fidelity Nat. Title Ins. Co. of New York v. TCF Nat'l Bank Ill*, No. 02 C 668, 2003 WL 22455505, at *1 (N.D. Ill. Oct. 28, 2003) (denying plaintiff's motion to compel further responses to interrogatories finding that defendant provided all the information it currently possessed, and directed plaintiff to specific documents).  Case law in this jurisdiction specifically related to TCPA actions, further confirms that Defendants' actions and efforts in this case are well beyond any expectation a court could have of a TCPA defendant.  *See Donnelly v. NCO Fin. Sys., Inc*., 263 F.R.D. 500, 503-504 (N.D. Ill. 2009) (compelling only the production of class-wide documents in response to interrogatories and document requests relating to prior express consent, after finding that defendant refused to produce any records to support its affirmative defense); *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377 at *6 (N.D. Ill. Sept. 24, 2013) (compelling only the inspection of defendant's databases by plaintiff's expert to determine an automated method to respond to plaintiff's interrogatories and document requests seeking prior express consent at plaintiff's expense).

As has been pointed out to Plaintiffs multiple times, and as Ms. Long has unequivocally stated to their counsel, "Defendants are not withholding any information that they currently possess on the basis of these statements, but have put Plaintiffs on notice that their responses

may be supplemented, if additional information is discovered." (Ramjee Decl., ¶10, Exhibit G, Email from Long to Lula).

## II. Defendants' Objections Are Valid

Despite Plaintiffs' supposed belief that Defendants' written objections and responses are "boilerplate," "invalid," and "worthless narrative," it has failed to provide any legal or factual basis for these contentions. (*See* Plaintiffs' Motion, pp. 11-12). A review of the written responses clearly demonstrates that Defendants made well thought out and specific responses to each and every one of Plaintiffs' 55 sweeping discovery demands. (*See* Lula Decl., Exhibits C & D). To provide such responses, multiple personnel were consulted across multiple departments within Essendant, and many hours were dedicated to crafting these responses. (Ramjee Decl., ¶3).

To the extent Plaintiffs are demanding that Defendants respond to discovery demands seeking a legal conclusion, such objections are wholly appropriate and required under Rule 33(b). Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived ..."); *see also Schaap v. Executive Indus. Inc.,* 130 F.R.D. 384, 388 (N.D. Ill. 1990) ("Naturally, a party does not have to answer a question that delves into purely legal issues unrelated to the facts of the case."); *Weddington v. Consolidated Rail Corp.*, 101 F.R.D. 71, 75 (N.D. Ind. 1984) (sustaining defendant's objection that plaintiff's interrogatory "necessitates a legal conclusion on the part of the defendant."); *Zinsky v. New York Cent. R. Co.*, 36 F.R.D. 680, 681 (N.D. Ohio 1964) ("An interrogatory calling for a factual inference or conclusion is proper, whereas an interrogatory calling for a legal conclusion is objectionable."). Moreover, Defendants ensured that it preserved its objections throughout by use of "Subject to and without waiving"

language.  This is common practice and is not meant to obstruct, delay, or otherwise conceal any discovery.

Finally, Plaintiffs have completely failed to acknowledge that despite the specifically tailored written objections and responses to their PEP and EBR demands, Defendants have painstakingly provided documentation to address those issues, and specifically explained the context of these document productions both in its written responses as well as in multiple meet and confers.  (Ramjee Decl., ¶3-10).

### III. Defendants Properly Indicated That Their Investigation Is Continuing and Reserved the Right to Supplement Their Discovery Responses

Plaintiffs would like to accelerate the discovery deadline and have unreasonably demanded that Defendants waive their objections and confirm that their entire investigation regarding their affirmative defenses is complete and concluded at this early stage in litigation. Plaintiffs themselves know that discovery is not complete, because Defendants are in the process of producing ESI.  This process has taken longer than expected, primarily due to Plaintiffs' refusal to work with Defendants to identify search terms. Despite a May 2017 discovery deadline set by this Court, Defendants are now asking that Defendants "affirmatively state … that it has conducted a reasonable search and diligent inquiry and the response is full and complete." (Plaintiffs' Motion, p. 14).  Defendants have already advised Plaintiffs that no documents are being withheld.  Given that discovery is still ongoing and Defendants are in the midst of determining search terms to apply to the remaining data, making such an affirmation is completely unreasonable and unwarranted.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully requests that the Court deny Plaintiffs' Motion to Compel.

By:   */s/Givonna S. Long*
      Henry T. Kelly (#6196301)
      Lauri A. Mazzuchetti (NJ #038481999)
      Givonna S. Long (#6290076)
      KELLEY DRYE & WARREN LLP
      333 West Wacker Drive, 26th Fl.
      Chicago, Illinois 60606
      Phone: 312-857-7070
      Fax: 312-857-7095
      lmazzuchetti@kelleydrye.com
      glong@kelleydrye.com

      *Attorneys for Defendants Essendant*
      *Inc. and Essendant Co.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby deposes and states that on November 15, 2016, she

caused the foregoing, **Brief in Opposition to Plaintiffs' Motion to Compel Further Responses**

**to Interrogatories and Requests for Production**, to be electronically filed using the CM/ECF

system which will send notification of such filing to all attorneys of record.

By:     */s/ Givonna S. Long*

       Henry T. Kelly (#6196301)
       Lauri A. Mazzuchetti (NJ #038481999)
       Givonna S. Long (#6290076)
       Kelley Drye & Warren LLP
       333 W. Wacker Dr.
       Chicago, Illinois 60606
       Phone (312) 857-7084
       hkelly@kelleydrye.com
       lmazzuchetti@keleydrye.com
       glong@kelleydrye.com

       *Attorneys for Defendants Essendant Inc. and*
       *Essendant Co.*